STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. FLEMING, Defendant-Appellant.

Court of Appeals

No. 92–2147–CR. *Submitted on briefs May 6, 1993.—Decided December 30, 1993.*

(Also reported in 510 N.W.2d 837.)

For the defendant-appellant the cause was submitted on the briefs of *William F. Hue* and *Matthew P. Dregne* of *Krek & Hue, S.C.* of Jefferson.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David J. Becker,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. The state charged defendant Michael J. Fleming with intentionally causing bodily harm to a child by conduct which creates a high probability of great bodily harm, contrary to sec. 948.03(2)(c).[1] In the instruction and verdict conference, the prosecutor requested that the trial court instruct the jury that it could find Fleming guilty of the lesser-included offense of intentionally causing bodily harm to a child, contrary to sec. 948.03(2)(b).[2] Over Fleming's objection, the trial court so instructed the jury, which acquitted Fleming of the charged offense and

---

[1] Section 948.03(2)(c), Stats., provides: "Whoever intentionally causes bodily harm to a child by conduct which creates a high probability of great bodily harm is guilty of a Class C felony."

[2] Section 948.03(2)(b), Stats., provides: "Whoever intentionally causes bodily harm to a child is guilty of a Class D felony."

convicted him of the lesser-included offense. We affirm the judgment entered on the verdict.

## THE ISSUES

(1) Did the prosecutor stipulate that the state would not request that the court instruct the jury on the lesser-included offense of intentionally causing bodily harm to a child, contrary to sec. 948.03(2)(b), Stats.? We conclude that the prosecutor did not so stipulate.

(2) Was the state judicially estopped from requesting that the court instruct the jury on the lesser-included offense? We conclude that it was not.

(3) Were there reasonable grounds in the evidence to acquit Fleming of the charged offense and convict him of the lesser-included offense? We conclude that there were.

(4) Did the trial court erroneously exercise its discretion when it admitted into evidence and allowed to be exhibited to the jury photographs of the child's injuries as they appeared on the day after the alleged physical abuse? We conclude that it did not.

## I.

## STIPULATION

Fleming contends that the prosecutor stipulated that the state would not request that the trial court instruct the jury that it could find him guilty of the lesser-included offense of physical abuse of a child. The trial court instructed the jury as follows:

> If you are satisfied beyond a reasonable doubt from the evidence in this case that the Defendant intentionally caused bodily harm to Desarae [W.] and that Desarae [W.] had not attained the age of 18

years at the time of the alleged offense, you should find the Defendant guilty of the lesser-included offense of physical abuse of a child.

Fleming's theory of defense was that he did not physically abuse Desarae and that someone else may have. He objected to submission of the lesser-included offense because of his fear that the jury would render a "compromise" verdict. In the instruction and verdict conference, Fleming's counsel stated:

> But what we don't want to risk is . . . the Jury saying: well, we've got two and now we'll sort of divvy up the pony where all he gets out of it is a Class D felony instead of a Class C felony . . . .

He argues that his fears proved "prophetic" when, forty-three minutes after it recessed for deliberations, the jury returned a verdict finding Fleming not guilty of the charged offense, and guilty of the lesser-included offense.

To support his argument that the prosecutor stipulated that she would not seek the lesser-included offense instruction, Fleming points to the following exchange, which occurred at the outset of the trial:

| THE COURT: | Are we in agreement, counsel, about the substantive [i]nstruction? I believe it's 2110.[3] |
| --- | --- |
| [PROSECUTOR]: | Yes, I believe 2110 is correct. |
| [DEFENSE]: | That [i]nstruction[,] as amended, [the] 1987 [version] is the one that we should use. |

---

[3] Wisconsin J I—Criminal 2110 instructs the jury on the offense of intentionally causing bodily harm to a child by conduct which creates a high probability of great bodily harm, contrary to sec. 948.03(2)(c), Stats.

THE COURT: I have one from 1989 . . . .

[DEFENSE]: That's fine.

The court then asked the prosecutor: "Is there a lesser-included offense here . . .?" To which the prosecutor replied: "I don't intend to submit a lesser-included, *at this time anyway*." (Emphasis added.)

This is hardly the stuff from which stipulations are fashioned. The prosecutor no more bound the state to refrain from seeking a lesser-included instruction than Fleming's attorney bound the defense to refrain from calling witnesses when, at the outset of *voir dire*, Fleming's attorney advised the court that he did not anticipate calling witnesses "at this time." These "commitments" merely guide the course of trial and are a courtesy to the court and other litigants.

Fleming also claims that a stipulation was made when the trial court ruled on his motion to dismiss at the close of the evidence. The trial court asked the prosecutor whether it was her position that there was evidence to support that Fleming knew that his conduct created a high probability of "substantial risk of death . . . serious permanent disfigurement, or permanent or protracted loss or impairment of the function of a bodily member or organ."[4] The prosecutor stated that that was her position. The court then asked the prosecutor whether she wanted a lesser-included offense instruction. The record shows that she paused before responding: "No." The prosecutor then asked: "[C]ould I just think about that for a moment?" The prosecutor then advised the court: "I'm willing to put all the mar-

---

[4] Section 939.22(14), Stats., defines "great bodily harm" in these terms. The Criminal Jury Instructions Committee states that this definition "should be used as needed." Wisconsin J I—Criminal 2110, cmt. 4 (1989).

554

bles in one bottle, I guess, and not ask for the lesser-included." The trial court responded: "So be it."

However, the prosecutor's confidence in the state's ability to prove the charged offense under sec. 948.03(2)(c), Stats., wavered and in the instruction and verdict conference she requested that the court instruct the jury on the lesser-included offense. Fleming objected, claiming that when the prosecutor informed the court that she would "put all the marbles in one bottle," she stipulated that she would not seek the lesser-included offense instruction. He renews his objection here. We conclude that the prosecutor's representation to the court, made outside the instruction and verdict conference, lacked the essential elements of a stipulation.

BLACK'S LAW DICTIONARY 1415 (6th ed. 1990) defines a "stipulation" as:

> The name given to any agreement made by the attorneys engaged on opposite sides of a cause (especially if in writing), regulating any matter incidental to the proceedings or trial, which falls within their jurisdiction. . . . An agreement, admission or confession made in a judicial proceeding by the parties thereto or their attorneys. . . .

Here, an element essential to a stipulation is lacking: the state did not enter an agreement with Fleming that it would not seek a jury instruction on the lesser-included offense. Fleming's consent or agreement to permit the trial court to instruct the jury on the lesser-included offense was unnecessary. The state and the defendant each had the right to request that the trial court submit an instruction on the lesser-included offense. *Zenou v. State*, 4 Wis. 2d 655, 668, 91 N.W.2d 208, 215 (1958). At the state's request, the trial court

was required to instruct on the lesser-included offense once it concluded that the evidence allowed the jury to acquit Fleming of intentionally causing bodily harm to a child by conduct which created a high probability of great bodily harm, and convict him of the lesser-included offense of intentionally causing bodily harm to a child. *State v. Sarabia*, 118 Wis. 2d 655, 661-62, 348 N.W.2d 527, 531-32 (1984). The appropriate time for the prosecutor to commit the state to a position was at the instruction and verdict conference. The prosecutor's "all-the-marbles" decision was made when the parties argued Fleming's motion to dismiss. Until the jury was actually instructed, the prosecutor was free to change her mind.

In contractual terms, Fleming gave no consideration for the prosecutor's "agreement" not to request the lesser-included offense. Thus, we conclude that the prosecutor did not stipulate that the state would not request that the trial court instruct the jury that it could convict Fleming on the lesser-included offense of intentionally causing bodily harm to a child.

## II.

### JUDICIAL ESTOPPEL

Fleming also argues that the prosecutor was judicially estopped from requesting that the trial court instruct the jury on the lesser-included offense. He states: "After two years before trial, two days of trial itself, and a two hour break to finish his closing argument, the defendant had two minutes to deal with an entirely different situation." He asserts that the state's

action is contrary to basic principles of justice.[5] We conclude that Fleming confuses judicial estoppel with equitable estoppel and that neither doctrine made it unjust for the court to grant the state's request and give the lesser-included offense instruction.

"Judicial estoppel" has been said to be "more obscure" than "equitable estoppel." *Konstantinidis v. Chen*, 626 F.2d 933, 936 (D.C. Cir. 1980). *See generally* Beck, *Estoppel Against Inconsistent Positions in Judicial Proceedings*, 9 BROOKLYN L. REV. 245 (1940). The object of equitable estoppel as applied to judicial proceedings "is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel." *Konstantinidis*, 626 F.2d at 937 (quoting 3 POMEROY'S EQUITY JURISPRUDENCE § 802 (5th ed. 1941)).

> "Judicial estoppel," on the other hand, although otherwise similar to the equitable estoppel rule against inconsistency, does not require proof of privity, reliance, or prejudice. This distinction reflects a difference in policy objectives: in contrast to equitable estoppel's concentration on the integrity of the parties' relationship to each other, judicial estoppel focuses on the integrity of the judicial process.

*Id.* (citation omitted). It has been said that "the doctrine [of judicial estoppel] is intended to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Yanez v. United*

---

[5] To some extent, the trial court agreed with Fleming. As noted, the trial court was "tempted under a sense of fair play . . . to make the case stand or fall as it has been presented."

*States*, 989 F.2d 323, 326 (9th Cir. 1993) (quoting *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988)). "Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake." *Konstantinidis*, 626 F.2d at 939 (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973)).

The record establishes that the prosecutor did not attempt to coldly manipulate the judicial process, but was simply undecided as to how she should proceed. Because judicial estoppel is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery, *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982), it is the prerogative of the trial court to invoke judicial estoppel at its discretion. *Yanez*, 989 F.2d at 326. Here, there is no suggestion that the prosecutor intended to play fast and loose with the judicial system. There was no occasion therefore for the trial court to invoke its discretion to refuse to submit to the jury a lesser-included offense instruction. In fact, the court considered it its duty to submit such instruction, upon the state's request. We therefore conclude that the prosecutor was not judicially estopped from requesting that the trial court instruct the jury on the lesser-included offense.

We further conclude that the doctrine of equitable estoppel did not preclude the prosecutor from changing the state's position and requesting that the jury be instructed on the lesser-included offense. Equitable estoppel may be applied where one's action or inaction

induces reliance by another to his detriment. *Gonzalez v. Teskey*, 160 Wis. 2d 1, 12, 465 N.W.2d 525, 530 (Ct. App. 1990). We need not decide whether the elements of equitable estoppel are present because we conclude that Fleming's reliance on the prosecutor's representation that she would not seek the lesser-included offense instruction was not reasonable. *See, e.g., Sanfelippo v. DOR,* 170 Wis. 2d 381, 390, 490 N.W.2d 530, 534 (Ct. App. 1992) ("The elements of estoppel are . . . action or nonaction . . . which induces *reasonable* reliance . . . .") (Emphasis added.)

██

It is unreasonable for a criminal defendant at the outset of trial to assume that the evidence presented at trial may not affect the state's prosecuting position. A criminal defendant must always be aware that the evidence may suggest to the state that an instruction on a lesser-included offense is appropriate. After the evidence is presented, the court may allow amendment of the complaint or information to conform to the proof where such amendment is not prejudicial to the defendant. Section 971.29(2), Stats. Variance from the complaint or information has been held immaterial where the court amended the charge against the defendant to charge a lesser-included crime. *Moore v. State,* 55 Wis. 2d 1, 7-8, 197 N.W.2d 820, 823 (1972) (information amended to include theft as lesser-included offense of robbery). Fleming's claimed reliance on the prosecutor's "all-the-marbles" position was unreasonable. The record of the argument on his motion makes clear that the prosecutor had second thoughts about the strength of the state's case after hearing the trial court's concerns. When Fleming made his motion at the close of the trial, he risked the possibility that the state would agree that its position on the charged offense

was tenuous and would request an instruction on a lesser-included offense. One of the principal purposes of the instruction conference is to allow the parties and the trial court to instruct the jury as to the law with respect to the evidence presented. For these reasons, we conclude that it was not unjust for the trial court to grant the state's request to instruct the jury on the lesser-included offense.

## III.

## EVIDENCE OF LESSER-INCLUDED OFFENSE

The lesser-included offense required only that the state prove beyond a reasonable doubt that Fleming intentionally caused bodily harm to a child. Section 948.03(2)(b), Stats.; Wis. J I—Criminal 2109. The charged offense required the state to show two additional elements: (1) a high probability of (2) great bodily harm to a child. Section 948.03(2)(c); Wis. J I—Criminal 2110.

"Submission of a lesser included offense instruction is proper *only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *Sarabia*, 118 Wis. 2d at 661, 348 N.W.2d at 531 (emphasis in original). "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury." *State v. Bergenthal*, 47 Wis. 2d 668, 675, 178 N.W.2d 16, 20 (1970), *cert. denied*, 402 U.S. 972 (1971). "The evidence supporting submission of the lesser-included offense [instruction] must be relevant and appreciable when viewed in a light most favorable to the defen-

dant." *State v. Repp*, 117 Wis. 2d 143, 151, 342 N.W.2d 771, 775 (Ct. App. 1983), *aff'd*, 122 Wis. 2d 246, 362 N.W.2d 415 (1985).

Fleming argues that the lesser-included offense instruction was inappropriate because if he intentionally and repeatedly struck Desarae on the head, he could not reasonably be found to have done so without knowingly creating a high probability of great bodily harm. He notes that Dr. Williams testified that Desarae had been repeatedly struck on the head with severe blows and that Desarae's injuries created a high probability of causing great bodily harm. Also, Dr. Mode testified that Desarae had either been struck or had her face pushed into something hard several times and that her injuries created the possibility of great bodily harm.

The state concedes that Dr. Williams testified that the blows Desarae suffered "had a high probability of causing great bodily harm to her." However, as the state correctly points out, the jury was not required to accept Dr. Williams' opinion, even if it had been uncontradicted. *Pautz v. State*, 64 Wis. 2d 469, 476, 219 N.W.2d 327, 330-31 (1974). The state also points out that its other expert witness, Dr. Mode, testified only that it "was reasonable to assume" that the injuries she described would "cause serious bodily harm or the *possibility* of great bodily harm."

Further, the prosecutor was rightly concerned that the jury could conclude that the state failed to prove the "great bodily harm" element of the charged offense. The trial court voiced its concern that there was no medical testimony as to the meaning of "great bodily harm." It pointed out that the doctors were not asked about substantial risk of death, serious permanent disfigurement, or permanent or protracted loss or

impairment of the function of any bodily member or organ. The court asked the prosecutor whether: "[W]ithout having . . . a definition of 'great bodily harm' or 'serious bodily injury' in the evidence . . . is there evidence before this Jury upon which they can find beyond a reasonable doubt that Desarae from her injuries had a substantial risk of death, [a] serious permanent disfigurement, which causes a permanent or protracted loss or impairment of the function of a bodily member or organ?" Clearly, the trial court was concerned that when the jury was instructed on the elements of the charged offense, it would be unable to find that Fleming had intended to cause great bodily harm because there was no definition of that term before the jury from a medical expert. The prosecutor was ultimately convinced that this possibility was a real danger.

We conclude that there were reasonable grounds in the evidence to acquit Fleming of the charged offense. Fleming concedes that the evidence, if believed by the jury, supports his conviction of the lesser-included offense. The trial court therefore properly instructed the jury that it could find Fleming guilty of the lesser-included offense of intentionally causing bodily harm to a child.

## IV.

## ADMISSION OF THE PHOTOGRAPHS

Photographs of Desarae were taken on the night of April 4, 1990, when she was admitted to the hospital. Photographs were also taken the next morning. Fleming argues that the next-morning photographs should

not have been admitted in evidence and exhibited to the jury.

Between the time of Desarae's examination in the hospital on April 4 and the next morning when she was seen by Detective Bleecker, her facial appearance had changed so dramatically that Bleecker arranged for Desarae to be taken immediately to be treated by Dr. Williams. The parties concede that the photographs show a dramatic difference between Desarae's appearance on April 4 and the morning of April 5. We have examined the photographs and agree.

Fleming argues that the photographs taken at the hospital on April 4 "more than sufficiently demonstrated Desarae's physical appearance." He further argues that "[t]he photographs taken on [April 5th] had no probative value whatsoever to show how the injuries were caused . . . ." Fleming also contends that the April 5th photographs were inflammatory and highly prejudicial and should have been excluded under sec. 904.03, Stats.

We conclude that the photographs of Desarae taken the morning after the alleged abuse were relevant and did not prejudice Fleming's defense. Fleming's theory of defense, in part, was that someone else inflicted additional injuries upon Desarae between the time she was released from the hospital on April 4th, and the time Detective Bleecker saw her the next morning. The photographs supported his theory; they showed a dramatic difference between Desarae's appearance shortly after the alleged abuse on the evening of April 4th and the following morning. It was to Fleming's advantage that the contrast in Desarae's appearance be as dramatic as it was. Therefore, Desarae's injuries, as shown by the photographs of April 5th, could not have prejudiced Fleming's defense.

██

Further, the state had to show that the abuse which Desarae suffered had the probability of causing her great bodily harm. The April 5th photographs assisted the jury in determining whether that element of the offense was proved. We therefore conclude that the trial court did not erroneously exercise its discretion when it admitted into evidence and allowed the April 5th photographs of Desarae to be exhibited to the jury.

*By the Court.*—Judgment affirmed.