STATE of Wisconsin, Plaintiff-Respondent,

v.

Chue MOUA, Defendant-Appellant.

Court of Appeals

*Nos. 96–3242–CR, 96–3243–CR. Submitted on briefs October 2, 1997.—Decided November 20, 1997.*

(Also reported in 573 N.W.2d 202.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Timothy J. Gaskell* of *Hanson & Gaskell*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sharon Ruhly,* assistant attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J. Chue Moua appeals from a judgment of conviction of four counts of second-degree sexual assault contrary to § 948.02(2), STATS., which provides that whoever has sexual contact or sexual intercourse with a person who has not attained the age of sixteen years is guilty of a Class C felony. The criminal complaints[1] charged four counts of first-degree sexual assault, contrary to § 948.02(1), which provides that whoever has sexual contact or sexual intercourse with a person who has not attained the age of thirteen years is guilty of a Class B felony. On appeal, Chue Moua contends that the trial court erred in including the second-degree sexual assault jury instruction and verdict question when the case was sent to the jury because the court may not do so sua sponte. He also argues that second-degree sexual assault is not a lesser included offense and the jury instruction was not supported by the evidence presented at trial. We reject each argument and conclude that the trial court properly included the jury instruction and verdict question for second-degree sexual assault of a child.

## BACKGROUND

Chue Moua was charged with having sexual intercourse with Kia V. on three occasions in July 1991 and one occasion in October/November 1991. The complaint alleged that Kia's date of birth was December 31, 1978, making Kia less than thirteen years old when the events took place. Chue Moua

---

[1] Two separate complaints were issued, one charging an incident in July 1991 and the second charging two incidents in July 1991 and one in October/November 1991. The two complaints were tried together and were consolidated on appeal.

admitted at trial that he had sexual intercourse with Kia V. during 1991 after they were married according to the Hmong tradition. His defense was that Kia was sixteen years old in 1991 and therefore he did not violate § 948.02(1), STATS.

There was conflicting evidence of Kia's age at trial. Kia testified that she was born on December 31, 1978, and was twelve years old and had just finished the seventh grade in the summer of 1991. She testified that this was the date on her "shot records" and this had been the date on her green card but she did not have her green card anymore. She also testified that at the wedding ceremony her aunt told Chue Moua she was only twelve and she heard her aunt tell him this. Kia's immunization records, her medical records and an Immigration and Naturalization Service (INS) record show a birth date of December 31, 1978. Kia testified that she came to the United States in August of 1988; before that she was in Thailand for six or eight years and before that in Laos. She did not know her age when she lived in Laos, but in Thailand and then coming to America, she was given an age, although she does not remember that process.

Kia also testified that in April 1993, she went to the INS office in Milwaukee with her mother and members of Chue Moua's family in order to change her INS records to show that she was older so that Chue Moua would not get in trouble. Kia's mother signed a statement at the time about Kia's age, which, Kia testified, her mother did not understand because her mother does not read and write. That statement changed Kia's birth date to May 2, 1975.

Kia's mother testified at the trial that she cannot read and write and that her husband, who was deceased at the time of trial, filled out the date of birth

for her daughter when the family came to the United States. She did not know how the children's birthdays were determined when they came to the United States, but she believes that what her husband put down was correct. She remembered when Kia was born in Laos but she did not know the year and date exactly, however she knew it was "something like in June," during the time of the Hmong returning to put the seeds in the ground. In Laos, she testified, it was not customary to keep track of birthdays and years.

On redirect, the prosecutor asked Kia's mother whether she thought any of her children's birth years were wrong. When the interpreter stated that the interpreter was not certain whether Kia's mother understood the question, the prosecutor restated it:

> Q: Do you think now that Kia's birth date or birth year of 1978 is right?
>
> A: I remember kids' date of birth is correct because when we come from Laos to Thailand I was still young and I still able to remember, but not for the younger ones because the younger one I won't be able to remember them correctly.
>
> Q: So the one when they came over is right?
>
> A: Yes.

Nhia Vang, a minority coordinator at the Western Wisconsin Technical College, who is also a Laotian Hmong, testified that records of birth dates are not kept in Laos. Parents count the number of seasons that have passed to keep track of their children's ages. Parents may be able to remember their children's ages up to about fifteen years, but the years may be inaccurate, and sometimes there are discrepancies even between the parents as to how many seasons have

passed since the child was born. He explained that when his people came to the United States from Thailand, the officials asked them their birth dates, and the officials sometimes accepted the birth date a person gave them and sometimes gave the person a different birth date.

Blong Thao, at the time of trial a deputy sheriff in Dane County, testified that he assisted Kia's mother, Chue Moua's mother, Kia, and Chue Moua in preparing an affidavit to submit to INS in April 1993. He was told then that Kia was probably born in early 1975 sometime and this is the year of her birth stated in the affidavit—May 2, 1975. Blong Thao also testified that he went over the document word for word with Kia's mother in her language.

Chue Moua testified that Kia's family told his family Kia was older than the records showed and Kia told him her age was not exactly as the records said. He testified that changing Kia's birth date on the INS records was the idea of both families so that the couple could live together and not break the law. He denied knowing she was twelve when they married.

Ker Moua, who is related by marriage to Kia's family, testified that he knew Kia in Laos and he remembered she was born around 1975 because the Thai War was over.

At the jury instruction conference, the court indicated that preliminarily it did not believe it was appropriate to instruct the jury on the "sixteen and under situation." In the court's view, the testimony was either that Kia was under thirteen or that she was sixteen or over at the time of the incidents but that there was no evidence that the jury could rely on other than speculation that she was over the age of thirteen and under the age of sixteen. The prosecutor responded

that in her view the testimony of Nhia Vang supported the idea that the parents were usually right about the year, give or take some, and that the jury could reasonably find that it was either December 31, 1978, or sometime around then. Defense counsel objected because in his view there was no testimony that she was between the ages of thirteen and fifteen.

The trial court went through its notes and then said it had reconsidered its preliminary comments. The court explained that its notes from Kia's mother's testimony were that Kia was born during the planting season, which the jury could assume was spring, and later she testified Kia was born in June, the warm season. The court calculated that if she were born in June of 1978, she would be fourteen at the time of the incidents. Defense counsel restated his objection to allowing the instruction regarding under sixteen, that is, the second-degree sexual assault, but the court permitted the instruction.

■■■■

Whether the evidence at trial supports the submission of a lesser included offense is a question of law, which the appellate court reviews de novo. *State v. Kramar*, 149 Wis. 2d 767, 791, 440 N.W.2d 317, 327 (1989). First, the reviewing court determines whether the lesser offense is, as a matter of law, a lesser included offense of the crime charged. If it is, then the reviewing court determines whether the instruction is justified based on the evidence. *State v. Morgan*, 195 Wis. 2d 388, 433–34, 536 N.W.2d 425, 442 (Ct. App. 1995). If a reasonable view of the evidence can support a guilty verdict beyond a reasonable doubt for both the greater offense and the lesser included offense, then no lesser included instruction may be given. *State v. Fleming*, 181 Wis. 2d 546, 560, 510 N.W.2d 837, 842

(Ct. App. 1993). However, if a reasonable view of the evidence supports a guilty verdict of the lesser included offense beyond a reasonable doubt but casts reasonable doubt as to some element or elements of the greater offense, then both verdict questions should be submitted to the jury. *Id.*

Chue Moua first argues that the trial court took it upon itself to include the jury instruction and verdict question for second-degree sexual assault, and that they were not requested by either counsel and were objected to by defense counsel. Chue Moua argues that § 971.29(2), STATS.,[2] allows amendments to complaints and information at trial subject to certain conditions but does not confer upon the trial court discretion to amend the complaint or information to conform to the proof without a request from either counsel. The State responds that the court may sua sponte include jury instructions for a lesser included offense, citing *State v. Felton*, 110 Wis. 2d 485, 513, 329 N.W.2d 161, 174 (1983); and also argues that the prosecutor did, in effect, request the instruction by arguing against the court's preliminary decision not to include that instruction.

We do not address the trial court's authority to sua sponte instruct on a lesser included offense, because we agree with the State that the prosecutor requested the instruction. After the State's preliminary comment

---

[2] Section 971.29(2), STATS., provides as follows:

> At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

indicating it did not view the evidence as permitting such an instruction, the prosecutor argued that it did, and the court agreed with the prosecutor. We consider it irrelevant that the court raised the issue before the prosecutor did. The pertinent point in response to Chue's argument is that the prosecutor made it clear that the State wanted the instruction on second-degree sexual assault. Chue implicitly concedes that a court may instruct on a lesser included offense if the prosecutor so requests and it is otherwise proper. Additionally, we observe that in *State v. Fleming*, 181 Wis. 2d 558, 559–62, 510 N.W.2d 837, 841–43 (Ct. App. 1993), we rejected a defendant's argument that it was unjust for a court to grant the prosecutor's request to instruct on a lesser included offense over the defense's objection, when there were reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser charge.

Chue Moua next argues that the instruction was erroneous because second-degree sexual assault under § 948.02(2), STATS., is not a lesser included offense of first-degree sexual assault under § 948.02(1). A lesser included offense means that all the statutory elements of this offense can be demonstrated without proof of any fact or element in addition to those that must be proved for the greater offense. *Hagenkord v. State*, 100 Wis. 2d 452, 481, 302 N.W.2d 421, 436 (1981). Chue Moua points to the under sixteen age requirement for second-degree sexual assault and the under thirteen age requirement for first-degree sexual assault, arguing that the age requirement is a separate and distinct element for each offense. We disagree. The State is required to prove the child's age for both offenses. If the State proves that the child is under

519

thirteen, a necessary element of first-degree sexual assault under § 948.02(1), then the State has proved all the elements for the offense of second-degree sexual assault, since it has proved that the child is under sixteen. Second-degree sexual assault under § 948.02(2) is therefore a lesser included offense of first-degree assault under § 948.02(1).

We reject Chue Moua's suggestion that *State v. Cuyler*, 110 Wis. 2d 133, 327 N.W.2d 662 (1983), supports his argument. In *Cuyler*, the issue of whether the trial court erred in amending the charge from first-degree sexual assault to second-degree sexual assault was presented, but the supreme court never reached the issue because it decided the appeal on other grounds. Moreover, the statute at issue in *Cuyler* was not the same as that applicable here. That statute used the language "12 years of age or younger" for first-degree sexual assault and "over the age of 12 years and under the age of 18 years" for second-degree sexual assault. Section 940.225(1)(d) and (2)(e), STATS., 1979–80. In 1987, the legislature revised the sexual assault statutes and created the present § 948.02(1) and (2), STATS.[3] Section 948.02(2) does not contain a "floor" for the age in second-degree sexual assault.

We now consider whether there was a reasonable basis in the evidence for the jury to acquit on the greater offense and to convict on the lesser offense. We agree with the trial court's conclusion that there was.

There was evidence that Kia's birth date was December 31, 1978. This was the date on her INS records; this was the birth date she testified to and the one she used; and this was the date on her medical records. If the jury believed this evidence, it could

---

[3] 1987 Wis. Act 332, § 55.

convict on the first-degree charge of sexual assault, since Chue Moua admitted to having sexual intercourse with Kia during 1991 after they were married.

On the other hand, Kia's mother testified that she remembered when Kia was born and that it was in the planting season in Laos, in June. She also testified that her husband filled out the birth dates when they came to the United States and she believed the year was correct. It is true that initially she stated she did not "know the date and year exactly" but a reasonable view of all her testimony, although there may be others, is that she believed her husband correctly stated the year of Kia's birth in the immigration documentation but not the month. Kia's mother's method of remembering the time of year of Kia's birth by the season was supported by the testimony of Nhia Vang; the ability of Kia's father to accurately record the year was also supported by Vang's testimony that parents could probably remember their child's age in years up to the age of fifteen. Kia's mother testified that she knew how to count, so it is reasonable to view her testimony as based on a present understanding of what counting the years since Kia's birth means. If the jury accepted Kia's mother's testimony as accurate on the month of Kia's birth and accepted her testimony that Kia's father correctly stated that 1978 was the year of her birth, then it could convict Chue Moua of second-degree sexual assault but could find there was a reasonable doubt on the first-degree sexual assault charge.

We are persuaded that the trial court did not err in instructing on the lesser included offense, and we therefore affirm the convictions.

*By the Court.*—Judgment affirmed.