COURT OF APPEALS
DECISION
DATED AND FILED

May 18, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP525-CR**

Cir. Ct. No. **2017CF47**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MICHAEL W. CINA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Michael W. Cina appeals a judgment of conviction for first-degree intentional homicide by use of a dangerous weapon.[1]  Cina argues the circuit court erroneously denied his request for lesser-included instructions of felony murder and first- and second-degree reckless homicide.  We conclude the evidence did not reasonably support those instructions.  Accordingly, we affirm.

## BACKGROUND

¶2     On the morning of August 21, 2016, Anita, Bernard Reavers's upstairs neighbor, asked to borrow his vacuum.[2]  While at Anita's apartment, Reavers heard a noise in the kitchen.  Reavers went to investigate, and Anita heard him say "Hey, man."  She heard a gunshot and found Reavers lying on the kitchen floor, bleeding from a head wound.  She was able to briefly glimpse a person running down the steps outside her kitchen.  Anita testified that only a few seconds elapsed between the time Reavers left for the kitchen and the gunshot.

¶3     Cina's case proceeded to trial, at which it is undisputed the State presented overwhelming evidence that Cina was the shooter.  Among other things, a glove left in the kitchen had DNA that matched Cina's, to a one-in-five-trillion certainty.  The tread on a pair of Puma tennis shoes at Cina's residence matched bloody footprints left at the scene, and a bag full of commonly used burglary tools was found in Cina's basement.  Cina also confessed to two friends that he had shot Reavers while attempting a robbery.

---

[1] Cina was also convicted of burglary and possession of a firearm by a felon.  He does not challenge his convictions on those counts, and we therefore do not further discuss them.

[2] We use a pseudonym for victims other than the deceased, pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 Cina did not testify at trial and presented no defense witnesses. His closing argument was that the State had not demonstrated Cina was the burglar or the shooter. He requested that the circuit court instruct the jury on several lesser-included offenses of first-degree intentional homicide: felony murder and first- and second-degree reckless homicide. The circuit court declined, reasoning that if the jury believed Cina was the shooter, the evidence gave rise to no other inference than that the shooting had been intentional. Conversely, if the jury concluded the State failed to establish Cina was the shooter, it would have to acquit him. The jury found Cina had committed the homicide, and the court sentenced him to lifetime imprisonment. He now appeals, asserting the failure to give the lesser-included instructions was error.

## DISCUSSION

¶5 A circuit court has broad discretion to determine what instructions are given to a jury. *State v. Wilson*, 149 Wis. 2d 878, 898, 440 N.W.2d 534 (1989). In general, we will affirm if the instructions fully and fairly informed the jury of the rules of law applicable to the case and assisted the jury in making a reasonable analysis of the evidence. *State v. Johnson*, 2021 WI 61, ¶16, 397 Wis. 2d 633, 961 N.W.2d 18. A circuit court's discretion is more limited when it comes to determining whether the evidence warrants an instruction on a lesser-included offense. *Id.* We review that issue de novo. *Id.*

¶6 The first step in the analysis is to determine whether the crime for which an instruction was requested is, in fact, a lesser-included offense of the crime charged. *State v. Jones*, 228 Wis. 2d 593, 598, 598 N.W.2d 259 (Ct. App. 1999). Here, the State agrees with Cina that felony murder, *see* WIS. STAT. § 940.03, and first- and second-degree reckless homicide, *see* WIS. STAT.

§§ 940.02 and 940.06, are all lesser-included offenses of first-degree intentional homicide under WIS. STAT. § 939.66(2).

¶7    The parties differ on the second step of the analysis, which requires a determination of whether the requested instruction is grounded in evidence before the trier of fact. *See Jones*, 228 Wis. 2d at 598. "It is error for a court to refuse to instruct on an issue which is raised by the evidence or to give an instruction on an issue which finds no support in the evidence." *Wilson*, 149 Wis. 2d at 898. A requested lesser-included instruction should be provided "if there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *Johnson*, 397 Wis. 2d 633, ¶27. In making this determination, the evidence is viewed in the light most favorable to the defendant. *Id.*, ¶18.

¶8    Cina argues the lesser-included instructions were appropriate because there was no evidence he had any dispute with or anger toward the victim and there were no witnesses at trial who saw the actual shooting. He posits that while one reasonable view of the evidence is that he shot with intent to kill,[3] "there are other possibilities as well." For example, Cina suggests there may have been a struggle, Reavers may have tried to grab his gun, or Cina might have shot the gun accidentally.

¶9    In response, the State marshals the considerable evidence at trial demonstrating intent to kill, including his comments to others and the fact that

---

[3] Cina appears to discount the notion that he could form the intent to kill nearly simultaneously with the act of shooting, yet it is black-letter law that there may be no appreciable space of time between the formation of the intent to kill and the act of killing. *See Muller v. State*, 94 Wis. 2d 450, 469, 289 N.W.2d 570 (1980).

Cina went armed to a residence during morning hours on a weekend, when people were likely to be home. The State dismisses Cina's arguments regarding alternative scenarios, noting there was no evidence to suggest a struggle or accident. The State's crime scene expert testified that based on the location of the spent cartridge, the wound points on Reavers's head and the blood splatter pattern, Reavers was likely standing near a stove in the kitchen and the shooter was standing either just inside or just outside the door to a deck several feet away. The expert's opinion was that Reavers "was probably turning away at the time he was shot."

¶10    Cina asserts the State's response ignores evidence presented by both its key eyewitness and its experts. Cina relies on Anita's testimony that her keys, a roll of tape that may have been Cina's, and the glove with Cina's DNA were found on the kitchen floor after the homicide and she did not know how they got there. Cina argues "[i]t is unlikely these items would have ended upon the floor absent some sort of struggle." To the contrary, there are countless other ways these items could have been deposited in their respective locations. Cina's assertion that it was most likely a struggle is pure speculation, which does not justify an instruction. "The evidence supporting submission of the lesser-included offense [instruction] must be relevant and appreciable when viewed in a light most favorable to the defendant." **State v. Fleming**, 181 Wis. 2d 546, 560, 510 N.W.2d 837 (Ct. App. 1993).

¶11    To be sure, Cina attempted to create an evidentiary basis for the lesser-included instructions at trial. He cross-examined one of the investigating officers about the absence of bloody footprints near the items on the kitchen floor, questioning clearly designed to suggest that those items were deposited on the floor prior to the shooting. On recross, the State explicitly mentioned the notion of

5

a "struggle," posing a hypothetical about whether in such a scenario bloody footprints would be expected to be found. It does not appear there was development of the factual record regarding any evidence that would support the notion of a struggle actually having taken place. As a result, the only evidentiary basis for the lesser-included instructions Cina points to are a few items strewn on the floor (two of which may have been used in the robbery) and the absence of bloody footprints near them. As previously stated, this is not a reasonable evidentiary basis for an acquittal on the intentional homicide charge and a conviction for either felony murder or reckless homicide.

¶12    Cina also relies on the testimony by an investigating officer who explicitly mentioned the possibility of a struggle. However, the testimony was offered to *disprove* that a struggle had taken place. The officer testified that while Reavers was in the hospital, he swabbed Reavers's hands and fingernails for DNA. When asked by the prosecutor why he did this, he responded, "Well, there is what is called touch DNA, and in a case like this where it appeared maybe there was a struggle, I was hoping during that struggle, Mr. Reavers would have secured some of the suspect's DNA on his fingers or underneath his fingernails." The State established at trial that there was, in fact, no DNA other than Reavers's found on his hands. The mere fact that one officer contemplated the possibility of a struggle and attempted to preserve evidence to determine whether that happened does not establish an evidentiary basis for the lesser-included instructions Cina desired.

¶13    Additionally, though unmentioned by Cina, we note that the glove found at the scene contained two minor DNA profiles in addition to the major profile belonging to Cina. These two minor profiles could not be used for comparative purposes because there was too little DNA, and any inference that one of those profiles was Reavers's would be pure speculation. First, not even the

gender of the minor contributors could be determined from the samples. Second, the gloves' whereabouts were not accounted for during the weeks prior to the shooting, after the individual the gloves belonged to had left them in Cina's basement. As a result, there are any number of possibilities other than a struggle for how the gloves could have come to contain the DNA of unspecified other individuals.

¶14 Cina also relies on the testimony of the medical examiner, who was asked whether she saw "any injuries that would be consistent with a struggle or with self-defense-type wounds." The examiner testified that Reavers had "hitting abrasions, which are skin scrapes in the midline of the back of the head and on the right cheek." However, she could not testify when those injuries were sustained or how they occurred. Again, this testimony was insufficient to warrant the lesser-included instructions.

¶15 Cina additionally argues that his "purported statements to his associates and wife," while powerful evidence that he was the shooter, do not demonstrate his intent to kill. The most significant of these statements for purposes of the arguments presented here was Marco Dejesus's testimony that after the shooting, Cina told him the person he shot was "trying to be a hero." We agree with the State that Cina's statements to others were highly inculpatory and, to the extent they spoke to his intent at all, indeed suggested that Cina intended to kill Reavers.

¶16 For the reasons explained in *State v. Borrell*, 167 Wis. 2d 749, 780-81, 482 N.W.2d 883 (1992), *opinion clarified on other grounds by State v. Greve*, 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479, Cina's statements to others were insufficient to establish an evidentiary basis for the desired lesser-included

instructions. ***Borrell*** discussed the specificity necessary for a defendant's after-the-fact exclamations to justify such instructions. None of the statements Cina made to his associates or to his wife plausibly suggested that Cina lacked intent to kill at the time of the offense.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.