**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 14, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1210-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF285

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GILBERT A. LEBLANC,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Gilbert A. Leblanc appeals a judgment of conviction, entered following a jury trial, for two counts of first-degree recklessly endangering safety and one count of felon in possession of a firearm. He also appeals from an order denying postconviction relief. Leblanc argues the circuit court erred by permitting the jury, instead of the court, to determine if the conduct underlying his Canadian conviction would be a felony if committed in Wisconsin, which would make Leblanc a felon for the felon-in-possession-of-a-firearm charge. He also argues the circuit court erred when it allowed the State to cross-examine him on specific instances of untruthful conduct. We reject Leblanc's arguments and affirm.

## BACKGROUND

¶2    In the early morning hours of July 23, 2015, someone fired eight to twelve shots into Steven[1] and Jane's residence while they were home. Steven reported to police that he believed it could have been Leblanc. Leblanc had recently learned that Steven sexually molested Leblanc's daughter when she was a child, approximately forty years ago. Jane reported she had observed a man in a gold four-door Buick sedan taking a photograph of her house a few weeks earlier. Police found a bag containing several 9mm bullets in the grass in front of the residence along with several spent 9mm shell casings. Police spoke to Leblanc's daughter's husband who reported that Leblanc had previously made statements about killing Steven, that Leblanc owned a gun, that Leblanc drove a tan four-door

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym when referring to the victims in this case ("Steven" and "Jane").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Buick sedan, and that Leblanc traveled extensively in the Midwest. Police arrested Leblanc. When they searched his vehicle, they found a 9mm handgun and 9mm bullets. A firearm expert from the Wisconsin State Crime Laboratory opined that the bullet casings found in front of Steven and Jane's residence were fired from the gun found in Leblanc's vehicle.

¶3 The State charged Leblanc with two counts of first-degree recklessly endangering safety and one count of felon in possession of a firearm. In support of the felon-in-possession-of-a-firearm charge, the State offered a South Carolina conviction. Prior to trial, the parties disputed whether the South Carolina conviction would be considered a felony in Wisconsin. The State argued the conduct underlying the South Carolina conviction amounted to a Wisconsin felony. Leblanc pointed out that he had pled to a reduced South Carolina charge and the conduct underlying the reduced charge would only amount to a Wisconsin misdemeanor. The circuit court agreed, concluding the South Carolina conviction did not qualify as a felony because the State was unable to prove the conduct to which Leblanc pled met the elements of a Wisconsin felony.

¶4 The State pivoted. It then offered a Canadian conviction to prove Leblanc was a felon. The State argued the conduct underlying the Canadian conviction was analogous to felony stalking in Wisconsin. The circuit court observed that Leblanc pled guilty to count three in the Canadian charging document. That count alleged:

> [D]uring the period beginning on or about the 15th day of May, 2012, and ending on or about the 10th day of July, 2012, at the Town of Caledon in the Central West Region, knowing that [S.S.] and [B.W.] were harassed or being reckless as to whether [S.S.] and [B.W.] were harassed, did, without lawful authority, repeatedly communicate directly or indirectly with [S.S.] and [B.W.],

> thereby causing [S.S.] and [B.W.] to reasonably, in all the circumstances, fear for their safety.

The court agreed this conduct was analogous to felony stalking under WIS. STAT. § 940.32(2). Leblanc disagreed and argued that the document the court relied on was not necessarily the conduct that supported the eventual conviction.

¶5 The circuit court indicated that "we can't have a trial on the underlying conduct; we have to look at the conduct contained within the charging portion" of the crime to which Leblanc pled guilty. The court explained that in the case of the South Carolina conviction, the conduct did not amount to a felony in Wisconsin; however, in the case of the Canadian conviction, the conduct "forms the basis of the felony of stalking."

¶6 At another hearing before trial, Leblanc renewed his objection to the Canadian conviction. Leblanc advised the court that he did not contest the admissibility of the certified copy of the Canadian conviction but maintained that the conduct underlying that conviction was not a felony. Leblanc argued "that's a fact for the jury to find because that goes to an element of the crime[.]" The State disagreed.

¶7 Eventually, the State stipulated with Leblanc that the jury could determine whether the conduct underlying the Canadian conviction would be a felony if committed in Wisconsin. The State advised that it was going to fly in one of the victims, B.W., from Canada to testify about Leblanc's conduct. The following exchange occurred:

> [The State]: Just one final point on that very issue. The defense very clearly seems not to want to stipulate to his felony status. But the defendant needs to understand that if he did stipulate to his felony status we would not be able to bring in [B.W.'s] testimony in our case in chief and we would not be able to tell the jury that it was criminal

harassment. They would merely be told that he is a convicted felon thereby precluding a lot of that evidence. Quite honestly, I like this route better, but I don't want there to be any appellate issues. So I want the defendant to understand that by choosing this strategy all of that evidence that could possibly be excluded comes in now.

[Defense counsel]: I understand that and [the State] has raised that with me. Mr. LeBlanc, for the record, has been very clear over the almost year that I've known him that he's not a convicted felon. So there's not any way that Mr. LeBlanc would come into court and stipulate on the record that he is a convicted felon. And, just for the record, Mr. LeBlanc, did I state your feelings accurately on that point?

[Leblanc]: One hundred percent.

[The circuit court]: Okay.

[Defense counsel]: So that's why we are proceeding in the way that we are.

¶8 Because the conduct underlying the Canadian conviction would now be put before the jury, the State proposed adding the following language to the pattern felon-in-possession-of-a-firearm jury instruction to describe what it means to be "convicted of a felony":

> "Convicted of a felony" means that the defendant was convicted of a crime elsewhere that would be a felony if committed in this state. This requires that you consider the underlying conduct of the out-of-state conviction, not merely the statute that was violated.
>
> In this case, the state alleges that the defendant's conduct which resulted in a criminal conviction for criminal harassment from Ontario, Canada, would have constituted the felony of stalking contrary to Sec. 940.32, had the conduct occurred in Wisconsin. The crime of stalking in Wisconsin has the following 4 elements:
>
> - The defendant engaged in a course of conduct directed at a person;
>
> - The course of conduct would have caused a reasonable person to fear bodily injury or death to himself or a member of his household;

5

- The defendant's acts induced fear in the person of bodily injury or death to himself or a member of his household;

- And that the defendant knew or should have known that at least one of the acts constituting the course of conduct would place the person in reasonable fear of bodily injury or death to himself or a member of his household.

¶9      Leblanc stipulated to the State's proposed instruction except Leblanc wanted an additional paragraph added that stated he alleged his conduct constituted the misdemeanor crime of unlawful use of a telephone and listed the elements for that offense. The State objected, arguing the State, not the defendant, is the party who alleges the crime; whether or not the conduct could meet the elements of and sustain a conviction for a lesser crime is not relevant and misleads the jury; and Leblanc's conduct did not fit the elements of the unlawful-use-of-a-telephone offense.

¶10      The court determined the parties were in agreement with the State's proposed instruction. As for Leblanc's additional paragraph, the court concluded that it was not going to include that paragraph. It reasoned the jury would determine whether the State met its burden of proving the conduct underlying the Canadian conviction was a felony and it was not relevant if the conduct could also fit a misdemeanor crime.

¶11      At trial, and relevant to the issues on appeal, the State called B.W. to testify about the incidents underlying Leblanc's Canadian conviction. B.W., who is a horse veterinarian, explained that between May 15, 2012 and July 2012, there was an issue regarding payment and Leblanc threatened that he was going to come to Canada and shoot B.W., that he was going to bring a gun and shoot multiple people in Canada, and that he was going to "clean house." B.W. testified that

Leblanc called his veterinarian hospital "extremely numerous times." As an example, B.W. said "one day that [Leblanc] called ten times within a few hour period." The calls would end by B.W. or B.W.'s receptionist hanging up on Leblanc. Leblanc also sent ten to fifteen faxes to B.W.'s office that consisted of dozens of pages and sent an equal amount of mailings. Eventually, Leblanc showed up at the office in Canada and became "extremely agitated" when he was informed that the mare, who he did not have title to, was not on the premises. B.W. testified Leblanc caused "significant fear and concern, yes, for myself and my staff in the hospital."

¶12 After B.W. testified, and outside the presence of the jury, the State pointed out the potential for juror confusion regarding B.W.'s testimony and the possibility that the jury would think "well, he threatens to shoot [B.W.] and I'm sure he did it to [Steven]." The State proposed a curative instruction to alleviate any confusion on the purpose of [B.W.'s] testimony, which was to establish that Leblanc had a prior felony to support the felon-in-possession charge. The court inquired as to whether Leblanc wanted a curative instruction. Leblanc stated he was "not requesting any additional instructions regarding the Ontario conviction."

¶13 Leblanc then testified. Leblanc denied being at Steven and Jane's residence and denied shooting a gun at the couple's home. Leblanc admitted to owning a gun but testified that he last fired it two months before the incident at Steven and Jane's residence. He testified that, on the night of the shooting, he was at a Motel 6 in Bloomington, Illinois. Leblanc stated he checked into the Motel 6 around 11:45 p.m. on July 22, 2015 and left the hotel around 9:00 a.m. on July 23. Leblanc testified he was aware that the Motel 6 receipt indicated he did not actually check in until 9:37 a.m. on July 23, but he attributed that to the hotel clerk's inexperience or a computer glitch.

¶14 Leblanc also admitted he had eight prior convictions. On cross-examination, outside the presence of the jury, the State advised the court that, pursuant to WIS. STAT. § 906.08(2), it wanted to ask about specific conduct underlying some of the crimes because they "relate to dishonesty and are probative of [Leblanc's] character." Leblanc objected, arguing that because he correctly answered the number of times he had been convicted of a crime, the State was prohibited under WIS. STAT. § 906.09 from asking about the underlying convictions. The court determined § 906.09 does not preclude the use of § 906.08(2). The court agreed that only conduct that showed untruthfulness or dishonesty would be admissible, and it allowed the State to question Leblanc on conduct from five prior convictions that involved crimes of theft and buying or concealing stolen property. The State then examined Leblanc on this conduct.

¶15 At the close of trial, as the parties discussed the final jury instructions, Leblanc did not object to the substantive instruction offered for the felon-in-possession-of-a-firearm charge. The jury then found Leblanc guilty, and the court sentenced Leblanc to prison.

¶16 Leblanc filed a postconviction motion requesting a new trial. He argued, as relevant to this appeal, the circuit court erred by permitting the jury, instead of the court, to determine whether the conduct underlying his Canadian conviction would be a felony if committed in Wisconsin. He also argued the circuit court erred when it allowed the State to cross-examine him about specific conduct from five of his prior convictions.

¶17 The circuit court denied Leblanc's postconviction motion. As to the Canadian felony issue, the court reasoned "it was Mr. Leblanc that insisted that it be a jury question; that it be a question for the jury to determine." The court

concluded Leblanc was "estopped from arguing now that it was to be a question of law solely for the court to determine and not a question for the jury." The court also noted that it had already made the determination that the conduct underlying the conviction constituted a felony under Wisconsin law.

¶18 As to Leblanc's claim that the circuit court erred by allowing the State to question him on the underlying conduct of some prior convictions after he admitted to those convictions, the court first observed WIS. STAT. §§ 906.09 and 906.08(2) were "not mutually exclusive." The court then determined the "specific instances of conduct for untruthfulness from five of Mr. Leblanc's eight prior convictions were probative for truthfulness or untruthfulness," and the probative value was not outweighed by the potential for prejudice. Leblanc appeals.

## DISCUSSION

¶19 On appeal, Leblanc renews his postconviction arguments.

### I. Out-of-state felony conviction

¶20 Leblanc argues the circuit court erred by permitting the jury, instead of the court, to determine if the conduct underlying his Canadian conviction would be a felony if committed in Wisconsin. In support, Leblanc cites *State v. Campbell*, 2002 WI App 20, 250 Wis. 2d 238, 642 N.W.2d 230. In *Campbell*, the court observed that because the defendant had pled guilty to an out-of-state charged count and because a guilty plea carries with it an admission of the facts charged against the individual, the circuit court could determine whether those facts would amount to a felony if committed in Wisconsin. *Id.*, ¶¶7-9. Leblanc

also points out that WIS JI—CRIMINAL 1343 (2021),[2] the pattern jury instruction for the felon-in-possession-of-a-firearm offense, appears to contemplate the court will make the legal determination about whether the underlying facts, if committed in Wisconsin, would amount to a felony. He emphasizes that a footnote in the instruction provides that "Where the crime committed in another state has a name not used in Wisconsin, it may be helpful to add a sentence to the effect that the offense would have been a felony if committed in this state." *Id.* at 4 n.7. Leblanc argues that pursuant to *Campbell* and WIS JI—CRIMINAL 1343, the court, not the jury, should have determined whether the Canadian conduct amounted to a felony. He contends this was plain error and by submitting this question to the jury, his trial turned into a sideshow of his Canadian conduct.

¶21 The State responds that Leblanc is judicially estopped from arguing it was error for the circuit court to let the jury determine whether the conduct underlying his Canadian conviction would be a felony if committed in Wisconsin. We agree.

¶22 Judicial estoppel is an equitable doctrine that seeks to preserve the integrity of the judicial process by preventing litigants from "playing 'fast and loose with the courts' by asserting inconsistent positions" in different legal proceedings. *State v. Fleming*, 181 Wis. 2d 546, 557, 510 N.W.2d 837 (Ct. App. 1993) (citation omitted). There are three elements that must be shown for judicial estoppel to apply: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position."

---

[2] All references to WIS JI—CRIMINAL 1343 are to the 2021 version.

10

*State v. Ryan*, 2012 WI 16, ¶33, 338 Wis. 2d 695, 809 N.W.2d 37. We review de novo whether the elements of judicial estoppel are present because it is a question of law. *Id.*, ¶30. If the elements are present, the decision to invoke estoppel is left to the circuit court's discretion. *Id.*

¶23 Here, the circuit court initially determined the conduct underlying the Canadian conviction would be felony stalking under WIS. STAT. § 940.32(2) if committed in Wisconsin. Leblanc, however, persisted in his objections and insisted it was for the jury to determine whether the conduct amounted to felony stalking. Eventually both the State and the circuit court acquiesced to Leblanc's position and the question was put before the jury. The State prepared a jury instruction to which Leblanc largely stipulated. The State cautioned Leblanc that by having the question go to the jury, all the evidence supporting his Canadian conviction would come in at trial. Leblanc responded that he understood. Leblanc did not object to the jury instructions at the close of trial, and even rejected a curative instruction proposed by the State to alleviate any confusion with respect to the purpose of [B.W.'s] testimony. *See* WIS. STAT. § 805.13(3) ("Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict"); *see also* **State v. Zelenka**, 130 Wis. 2d 34, 44, 387 N.W.2d 55 (1986) (WIS. STAT. § 805.13(3) applies to criminal cases by virtue of WIS. STAT. § 972.11(1)). In short, the record shows Leblanc wanted the question to go to the jury.

¶24 Leblanc's current position is the exact opposite of the one he convinced the circuit court to adopt at trial. It is well established that "[a] defendant cannot create his own error by deliberate choice of strategy and then ask to receive the benefit from that error on appeal." **State v. Gary M.B.**, 2004 WI 33, ¶¶11-12, 270 Wis. 2d 62, 676 N.W.2d 475 (citation omitted) (discussing invited

11

error as specific application of estoppel doctrine). The elements of judicial estoppel are present, and the circuit court did not err by invoking the doctrine.

¶25 Moreover, although Leblanc appears to argue that "plain error" prevents application of the doctrine of judicial estoppel, he cites no authority to support that proposition. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address arguments that are undeveloped and unsupported by legal authority). In any event, "[i]t is well-settled that where error is invited, not even plain error permits reversal." *United States v. Fulford*, 980 F.2d 1110, 1116 (7th Cir. 1992).

## II. Specific instances of untruthful conduct

¶26 Leblanc next argues that the circuit court erred by allowing the State to cross-examine him about the underlying conduct of some of his prior convictions. "The admission of evidence is subject to the circuit court's discretion." *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. This court "will not disturb the circuit court's decision to admit evidence unless the court erroneously exercised its discretion." *Id.*

¶27 Leblanc contends that because he correctly admitted the number of prior convictions, then pursuant to WIS. STAT. § 906.09, the State was prohibited from examining him on the nature of those convictions. He asserts the circuit court erred by permitting the State to question him about the nature of some of those convictions.

12

¶28 Leblanc, however, overlooks that the State did not move to introduce the conduct pursuant to WIS. STAT. § 906.09,[3] rather, the State moved to introduce the conduct pursuant to WIS. STAT. § 906.08(2). Evidence may be admissible under different theories and nothing in either §§ 906.08(2) or 906.09 suggests the statutes are mutually exclusive.

¶29 Rather, WIS. STAT. § 906.08(2) allows for introduction of specific instances of untruthful conduct "on cross-examination of the witness" when used "for the purpose of attacking or supporting the witness's character for truthfulness" if the conduct is "probative of truthfulness or untruthfulness and not remote in time." *Id.*

¶30 Here, we agree with the State that Leblanc's character trait for truthfulness was at issue at trial. He testified in his own defense, denied he committed the offense, and testified that evidence against him used by the prosecution was false. As one example, he testified "[B.W.] is a liar and a thief." As another, he testified the Motel 6 records that police obtained, which showed he did not actually check into the hotel until the morning after the shooting, were incorrect. As yet another, he disavowed an inmate witness's testimony, who had testified that Leblanc admitted shooting at Steven and Jane's residence. We conclude the State appropriately cross-examined Leblanc about specific instances of conduct that reflected on his character for truthfulness, satisfying WIS. STAT. § 906.08(2)'s requirements. The circuit court did not err by allowing the State to

---

[3] WISCONSIN STAT. § 906.09(1) provides "For the purpose of attacking character for truthfulness, a witness may be asked whether the witness has ever been convicted of a crime or adjudicated delinquent and the number of such convictions or adjudications. If the witness's answers are consistent with the previous determination of the court …, then no further inquiry may be made unless it is for the purpose of rehabilitating the witness's character for truthfulness."

inquire on cross-examination about the underlying facts of five of Leblanc's prior convictions.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.