STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert CARNEMOLLA, Defendant-Appellant.†

Court of Appeals

*No. 98–2928–CR. Submitted on briefs June 4, 1999.——Decided July 29, 1999.*

(Also reported in 600 N.W.2d 236.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, with *Jennifer E. Nashold,* assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

EICH, J. Robert Carnemolla appeals from a judgment convicting him of substantial battery and from an order denying his motion for postconviction relief. He argues that: (1) he was deprived of due process when one of the State's witnesses, Michael Morris, testified that he (Morris) had two prior convictions, when in fact he had three;[1]and (2) the circuit court erroneously exercised its discretion when it denied his motion for a new trial based on newly discovered evidence. We reject his arguments and affirm the judgment and order.

The charge arose from an altercation between Carnemolla and another man, Brian Peters, at a time when both men were inmates at the Fox Lake Correctional Institution. Peters testified that, while he was asleep in his cell, Carnemolla cut his arm with a razor blade embedded in the handle of a toothbrush. Carnemolla argued self-defense, claiming that Peters was the initial aggressor. He testified that Peters came at him with the toothbrush-weapon and he was unintentionally cut during the ensuing struggle.

Michael Morris, another Fox Lake inmate, testified for the State at trial. Prior to trial, Carnemolla had requested disclosure of the criminal records of potential prosecution witnesses. The Crime Information Bureau report provided by the prosecution listed two

---

[1] In the alternative, Carnemolla argues that his trial attorney's failure to discover Morris's third conviction deprived him of the effective assistance of counsel. As will be seen, our disposition of his due process claim disposes of this argument as well.

armed robbery convictions for Morris. It also showed that Morris had been charged with auto theft, but did not indicate any conviction. In truth, Morris had been convicted of the theft charge. In preliminary testimony taken outside the jury's presence, Morris stated that he had two prior convictions for armed robbery. Neither side questioned him regarding the auto theft charge. The parties then stipulated that Morris, if asked, should testify that he had two prior convictions, and the court agreed. Morris testified as instructed.

At the trial's conclusion, the jury found Carnemolla guilty as charged and he was sentenced to eight years in prison.

Learning for the first time after trial that Morris had in fact been convicted of auto theft in addition to the two armed robberies, Carnemolla moved for a new trial, claiming that his due process rights were violated by Morris's incorrect testimony about his prior convictions and, alternatively, that his trial counsel was ineffective for failing to discover the true facts. He also sought a new trial on grounds of newly discovered evidence in the form of testimony by another inmate that, among other things, he had seen Peters with a toothbrush-knife before the altercation with Carnemolla. The circuit court denied both motions.

## The Witness's Prior Convictions

Carnemolla claims that Morris's testimony violated his due process rights because it prejudiced his defense in three ways: (1) it misled the jury into believing that Morris had fewer convictions than he actually had, making him look more credible than he really was; (2) had he known Morris's testimony was untrue he would have been permitted to inform the jury of the nature of the prior convictions—emphasizing their

seriousness; and (3) he could have argued to the jury that, having testified untruthfully about his prior convictions, Morris may have been lying about other aspects of the case as well. The circuit court concluded that any error or untruth in Morris's testimony about his prior convictions was harmless beyond a reasonable doubt.

■

An error is harmless if there is no reasonable possibility that it contributed to the conviction. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). A "reasonable possibility" is one which is sufficient to undermine our confidence in the outcome of the proceeding. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). We review the circuit court's harmless-error conclusion *de novo, State v. Keith*, 216 Wis. 2d 61, 69, 573 Wis. 2d 888, 892–93 (Ct. App. 1997), and the State, of course, bears the burden of proof on the issue. *State v. Sullivan*, 216 Wis. 2d 768, 792, 576 N.W.2d 30, 41 (1998).

The circuit court reasoned as follows in denying Carnemolla's motion:

> The Court finds that whether there were two convictions or three convictions did not make any difference . . . concerning the credibility of Mr. Morris. Mr. Morris was there as an inmate. [The jury] certainly knew that he had been convicted . . . of a serious crime, . . . by reason of the fact that he was . . . an inmate having been housed in the Wisconsin State Prison. The Court does not believe that it made any difference whatsoever to the jury whether he was convicted of two or three. This isn't a situation where whether it had been two or ten. The Court finds that the failure of the State to correctly

state the number of convictions as three in [no] way impacted on the results of the trial.

Our independent review of the record and the applicable law satisfies us, as it did the circuit court, that there is no reasonable possibility that the prosecution's failure to investigate and disclose Morris's third conviction contributed to Carnemolla's conviction. As the court indicated, the jury was well aware that Morris, a Wisconsin State Prison inmate, had been convicted of at least one serious crime. And, as the State points out, it is likely that Morris's credibility was further implicated when he appeared before the jury wearing prison clothes and admitting to two prior convictions. As to Carnemolla's argument that, had he known of the third conviction, he would have been able to put the nature of all three before the jury, we answer the argument with the observation that there is no reason to believe that, had Morris's third conviction been known ahead of time, anything would have been handled any differently—the parties' stipulation would simply have reflected three, rather than two, convictions.[2] Finally, Carnemolla's one-sentence argument that "the fact that Morris lied about his convictions suggests that he may have lied about other aspects of the case," needs no broader response than that it is unavailing.

■

While it is true that a higher number of convictions may suggest less credibility on a witness's part, *see*

---

[2] We think it is also worth noting that the pattern jury instruction covering impeachment by prior convictions, WIS J I—CRIMINAL 325 and 327 (1997)—which was given by the trial court in this case—does not invite the jury's consideration of the number of convictions. The jury receives the same instruction no matter how many convictions are said to exist.

*State v. Smith*, 203 Wis. 2d 288, 297–98, 553 N.W.2d 824, 828 (Ct. App. 1996), the question is one of degree. The State observes in its brief that "[t]his is not a case of one conviction versus eleven . . . or none versus some . . . [and the] marginal difference between two and three convictions cannot be considered so substantial as to undermine the jury's verdict." We agree. *Cf. State v. Boshcka*, 178 Wis. 2d 628, 643–44, 496 N.W.2d 627, 632 (Ct. App. 1992) (defendant's admission to five convictions rather than the true number, four, held to be harmless error); *State v. Bowie*, 92 Wis. 2d 192, 202, 204, 284 N.W.2d 613, 617 (1979) (defendant's admission to four convictions when he only had one, held to be harmless error). We think the difference between two and three convictions was marginal, and certainly not substantial enough to have affected the jury's verdict. We therefore conclude that the error was harmless beyond a reasonable doubt, and thus could not have prejudiced Carnemolla's defense.

■

It follows that Carnemolla's ineffective-assistance-of-counsel argument is equally unavailing. To prevail on such a claim, he must establish: (1) that his attorney's performance was deficient; *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). If he fails to satisfy either test, his argument must fail. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990). We have held that any error with respect to Morris's testimony was harmless beyond a reasonable doubt—that it did not prejudice Carnemolla's defense. That being the case, the ineffective-assistance argument must fail as well.

## Newly Discovered Evidence

Carnemolla next argues that the circuit court erred when it denied his motion for a new trial based on newly discovered evidence. A new trial will be granted on such grounds only if the defendant establishes by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking to discover it; (3) the evidence is material to an issue in the case; (4) the evidence is not merely cumulative to the testimony introduced at trial; and (5) it is reasonably probable that, with the evidence, a different result would be reached at a new trial. *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707, 710–11 (1997); *State v. Krieger*, 163 Wis. 2d 241, 255, 471 N.W.2d 599, 604 (Ct. App. 1991); *see also* § 805.15(3), STATS. The motion is addressed to the trial court's sound discretion and we will affirm the circuit court's decision if it has a reasonable basis and was made in accordance with accepted legal standards and facts of record. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262, 265 (Ct. App. 1992).

As is the case with ineffective-assistance-of-counsel motions, a defendant advancing a newly discovered evidence argument must satisfy each of the five criteria to warrant a new trial, *State v. Sarinske*, 91 Wis. 2d 14, 38, 280 N.W.2d 725, 736 (1979). While the circuit court noted that the evidence—the other inmate's observations of a toothbrush-knife in Peters's possession—would be somewhat cumulative, the circuit court decided the motion on the fifth element, ruling that the new evidence did not create a reasonable probability that a different result would obtain on retrial.

The new evidence is the testimony of David Sautier, who claimed to have known Peters while both men were incarcerated at Fox Lake. Sautier testified at the motion hearing that, at a time prior to the Peters/Carnemolla altercation, he (Sautier) briefly saw a "greenish-blue toothbrush with a razor melted on to it" fall out of Peters's pocket onto a sidewalk. According to Sautier, when he asked Peters why he was carrying the weapon, Peters responded: "[T]o take care of business." Sautier stated that, a few weeks later Peters told him he had gotten into a fight with his roommate and that when he tried to use the weapon on his roommate, "his roommate had somehow ended up getting it away from him, and he [Peters] ended up getting cut instead." Finally, Sautier testified that, nearly two years later, he met Carnemolla at another institution and, after realizing he was the one who had fought with Peters at Fox Lake, and believing that Carnemolla may have been "unfairly convicted because of [the altercation]," he (Sautier) drafted an affidavit reporting the incident to prison authorities. On cross-examination, Sautier said that he drafted his report "around the end of August, 1997." He later acknowledged, without explanation, that the report was dated December 1997.

As indicated, the circuit court concluded that there was no reasonable probability that Sautier's evidence would result in a different result on retrial. Citing an older case, *Hedger v. State*, 144 Wis. 279, 128 N.W. 80 (1911), for the proposition that newly discovered evidence consisting of testimony by a witness who is not credible cannot serve as the basis for a new trial, the court stated:

> It is incredible to believe that an individual who today on the stand could not remember that [he] did

the [report] in December of 1997 rather than in August of 1997, could remember in December of 1997 that in fact this incident occurred in February of 1996, and could remember in fact that it was the last week of February 1996. I believe that it is incredible that a witness can remember after seeing an object fall to the floor for a second or two, that in fact that it was a greenish-blue toothbrush, not just a toothbrush, but a greenish-blue toothbrush, and in preparing [a report] in December of 1997 concerning an incident that occurred in February of 1996.

I believe that . . . the credibility of Mr. Sautier, an individual who had this knowledge allegedly from February of 1996 until December of 1997, and did not come forward with it until such time as he developed a relationship with Robert Carnemolla, goes to the issue of credibility. I do not believe that the jury would find this testimony credible.

Carnemolla argues first that the circuit court misapplied *Hedger*—a case which, according to Carnemolla, is limited to newly discovered evidence which is "incredible as a matter of law." We disagree. Hedger, who was convicted of shooting a man to death, presented newly discovered testimony of a third party who claimed he heard a shot come from the victim's house around the time of the murder and saw a man other than Hedger hastily depart from the home. The evidence adduced at the motion hearing, however, established that it would be physically impossible to identify a person leaving the victim's home from the witness's vantage point. The supreme court affirmed the circuit court's denial of the motion for a new trial based on this evidence, stating: "In short, [the new witness's] sanity, his veracity, and his general character were impeached by himself and by others. This

condition justified the circuit court in denying the motion for a new trial . . . ." *Id.*, 144 Wis. at 313, 128 N.W. at 94. It may be that the physical facts rendered the witness's testimony implausible or against the laws of nature, but nowhere in the court's opinion did it either state or imply that, to warrant denial of a new-trial motion, the newly discovered evidence must be "incredible as a matter of law," as opposed to not credible or not believable. Indeed, the trial court in *Hedger* made several credibility determinations in arriving at its decision that a new trial would not result in a different verdict[3]—and, as indicated, that decision was affirmed on appeal.

In a contemporary case, *McCallum, supra,* the defendant, after being convicted of sexually assaulting a child, moved to withdraw his *Alford* plea based on newly discovered evidence—the victim's subsequent recantation of her accusations. The trial court denied McCallum's motion, ruling that because, in the court's view, the victim's recantation was "less credible" than her original accusation, McCallum hadn't established a reasonable probability of a different result on retrial. The supreme court reversed, concluding that the trial court had used an erroneous legal standard in consid-

---

[3] The trial court in *Hedger* stated that it believed the witness's story was fabricated for the purpose of notoriety, or perhaps was "loose, careless, and irresponsible talk, without recognizing its possible consequences, spread among his friends and acquaintances, but which he, when called upon to verify or deny, had not the moral courage to deny because he feared it could expose him to the ridicule of his friends." *Hedger v. State*, 144 Wis. 279, 310, 128 N.W. 80, 92 (1911). The court further stated that it believed the witness's "moral sense is of so low an order . . . and so weak," and that "[his] testimony is full of contradictions and inconsistencies." *Id.*

659

ering the issue. "The correct legal standard when applying the 'reasonable probability of a different outcome' criteria," said the court, is not whether the recantation was less credible than the victim's original accusation, but "whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt." *McCallum*, 208 Wis. 2d at 474, 561 N.W. 2d at 711. In other words, the conclusion that a different result was unlikely did not necessarily follow from the trial court's "less credible" determination, because that determination would not necessarily lead to a reasonable doubt in the minds of the jurors. The court noted in this regard, however, that a finding that the recantation was incredible would do just that:

> A finding that the recantation is incredible necessarily leads to the conclusion that the recantation would not lead to a reasonable doubt in the minds of the jury. However, a finding that a recantation is less credible than the accusation does not necessarily mean that a reasonable jury could not have a reasonable doubt.

*Id.* at 475, 561 N.W.2d at 711. Indeed, the *McCallum* court expressly stated that "credibility is crucial to the application of the proper legal standard, and the circuit court judge is in a much better position to resolve the question of whether the recantation would raise a reasonable doubt in the minds of a jury that is looking at both the recantation and the original statement." *Id.* at 479, 561 N.W.2d at 713. This is so, said the court, because "[m]ore often, credibility, or lack thereof, is

revealed by a close examination of the witness's demeanor." *Id.* at 480, 561 N.W.2d at 713.[4]

In the instant case, the trial court found Sautier to be "incredible." It also found "that a jury would [not] find [ ]his testimony credible." Under *McCallum,* this is the equivalent of finding that there is no reasonable probability of a different outcome on retrial. The circuit court had the opportunity to view Sautier's demeanor on the stand, weigh evidence of bias or motive to testify falsely, consider past convictions and other impeaching evidence and look for any other indicia of reliability or the lack thereof. As in all such cases, the trial court is in the best position to evaluate the credibility of his testimony. *See Estate of Dejmal,* 95 Wis. 2d 141, 151–52, 289 N.W.2d 813, 818 (1980) (deference to the trial court's credibility assessments is justified because of its superior opportunity to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony).

A more recent case is also instructive. In *State v. Kivioja,* 225 Wis. 2d 271, 592 N.W.2d 220 (1999),

---

[4] Carnemolla maintains that *McCallum* is inapposite because it involved recantation testimony, as opposed to the testimony of a "new" witness. We agree with Justice (now Chief Justice) Abrahamson who, concurring in *McCallum,* said that "[i]n Wisconsin, recantation evidence is treated as one of several types of newly discovered evidence to be analyzed under the 'manifest injustice' test"—which is the five-element test for a new trial based on newly discovered evidence, supplemented by a sixth "corroboration" criterion applicable only in recantation cases. *State v. McCallum,* 208 Wis. 2d 463, 482, 561 N.W.2d 707, 714 (1997) (Abrahamson, concurring). We see no reason why the basic standards articulated in *McCallum* and other recantation cases should not apply equally in non-recantation cases, where the new evidence merely takes on a slightly different form.

another recantation case, the defendant argued that the circuit court erred in denying his plea-withdrawal motion when it engaged in a credibility assessment of the new evidence. He contended that the court was "precluded from considering the credibility of evidence a defendant offers in support of a motion to withdraw a plea." *Id.* at 287, 592 N.W.2d at 229. The supreme court rejected the argument, citing numerous cases where courts have made credibility determinations in similar situations. *See, e.g., State v. Canedy,* 161 Wis. 2d 565, 585, 469 N.W.2d 163, 171 (1991) (upholding the denial of a plea-withdrawal motion where circuit court "did not believe [the] asserted reasons for withdrawal of the plea"), and *Dudrey v. State,* 74 Wis. 2d 480, 483, 247 N.W.2d 105, 107 (1976) (holding that the circuit court did not apply an incorrect standard when it denied a plea-withdrawal motion based on its disbelief of the defendant's testimony); *see also, State v. Garcia,* 192 Wis. 2d 845, 863, 532 N.W.2d 111, 118 (1995), a case with facts similar to those in *Dudrey* where the supreme court reaffirmed its holding in *Canedy* that if the trial court does not believe the defendant's asserted reasons for withdrawal of the plea, the court may, in its discretion, deny the defendant's motion for the defendant's failure to present a fair and just reason.[5]

In summing-up the significance of these and similar cases, the *Kivioja* court stated:

> These cases are evidence that credibility assessments are crucial to a determination of

---

[5] Carnemolla also claims that plea-withdrawal cases are inapposite because they involve different facts. We said in *State v. Krieger,* 163 Wis. 2d 241, 255, 471 N.W.2d 599, 604 (Ct. App. 1991), however, that: "[t]he newly discovered evidence test is . . . equally applicable where the defendant seeks to withdraw a plea. . . ."

whether the evidence offered is a fair and just reason supporting withdrawal and they are consistent with the requirement that the defendant must do more than allege or assert a fair and just reason, that he or she must also show that the reason actually exists. . . . In order to assess whether a reason actually exists, the circuit court must engage in some credibility determination of the proffered reason, without which withdrawal would be automatic, a matter of right.

Because the reason offered must be genuine, the circuit court must determine whether the defendant's reason is credible, plausible or believable.

*Id.*, 225 Wis. 2d at 291, 592 N.W.2d at 230.

We see no error in the circuit court's denial of Carnemolla's motion for a new trial.

*By the Court.*—Judgment and order affirmed.