COURT OF APPEALS
DECISION
DATED AND FILED

October 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP362**

**STATE OF WISCONSIN**

Cir. Ct. No. 2009CF5594

**IN COURT OF APPEALS**
**DISTRICT I**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SCOTT R. SHALLCROSS,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge.  *Affirmed*.

Before White, C.J., Colón, P.J., and Geenen, J.

¶1   GEENEN, J.  Scott R. Shallcross pleaded guilty to two counts of homicide by intoxicated use of a vehicle.  To support the factual basis for his pleas, Shallcross stipulated to the facts alleged in the criminal complaint, including that he was driving the vehicle that caused the accident.  The vehicle belonged to

Shallcross's friend, Daniel Gorectke, who was a passenger in the vehicle when the accident occurred.

¶2 After extensive postconviction litigation in the circuit court,[1] this court,[2] and the federal courts,[3] Shallcross, through counsel, filed the WIS. STAT. § 974.06 motion underlying this appeal seeking to withdraw his guilty pleas based on newly discovered evidence. Specifically, Shallcross identifies a DNA report that shows the presence of an unidentified third person's DNA on the steering column airbag of Gorectke's vehicle, and he argues that this third person was driving the vehicle. On appeal, Shallcross, pro se, argues that the State committed a *Brady*[4] violation because the DNA report is exculpatory and the State withheld it. Shallcross complains that the circuit court erroneously applied the legal standard that applies to a defendant's postsentencing motion to withdraw their plea based on newly discovered evidence and should instead have analyzed his motion as a *Brady* claim.

¶3 The State argues that Shallcross is judicially estopped from arguing that he was not the driver of Gorectke's vehicle because he admitted that he was the

---

[1] The Honorable Kevin E. Martens accepted Shallcross's guilty pleas, sentenced him, and denied his first motion to withdraw his guilty pleas. The Honorable Jeffrey A. Wagner denied Shallcross's first WIS. STAT. § 974.06 (2023-24) motion. The Honorable Glenn H. Yamahiro partially denied Shallcross's second § 974.06 motion. The Honorable Jean M. Kies denied the remainder of Shallcross's second § 974.06 motion. On appeal, we review only Judge Kies's order, and each judge is referred to as the "circuit court."

All references to the Wisconsin Statutes are to the 2023-24 version.

[2] *State v. Shallcross*, No. 2011AP2432-CR, unpublished slip op. (WI App Oct. 23, 2012); *State v. Shallcross*, No. 2014AP1121, unpublished slip op. (WI App. Apr. 21, 2015).

[3] *Shallcross v. Pollard*, No. 15-CV-1136, 2016 WL 6072381 (E.D. Wis. Oct. 17, 2016); *Shallcross v. Foster*, No. 16-4169, 2017 WL 11680207 (7th Cir. May 12, 2017); *Shallcross v. Foster*, No. 17-7754, 584 U.S. 938 (Apr. 16, 2018).

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

driver by pleading guilty. The State also argues that the DNA report was not exculpatory, so Shallcross's **Brady** claim must fail.

¶4 We conclude that Shallcross is not judicially estopped from arguing that newly discovered evidence (i.e., the DNA report) supports the assertion that he was not driving Gorectke's vehicle, and that this evidence justifies the withdrawal of his guilty pleas. However, we agree with the State that the DNA report is not exculpatory. Accordingly, it cannot be the basis of a **Brady** claim.

¶5 Finally, the State asks us to "clarify the test for the fifth criterion that must be met to withdraw a guilty plea based on newly discovered evidence—a reasonable probability of a different outcome" if the case were to go to trial with the new evidence. We conclude that we are bound by **State v. McCallum**, 208 Wis. 2d 463, 561 N.W.2d 707 (1997), and other binding cases that establish that after determining that the evidence is "newly discovered evidence," the test is whether a jury would have a reasonable doubt as to the defendant's guilt in a trial that included the newly discovered evidence.

¶6 In this case, the circuit court applied the incorrect legal standard, asking not whether a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report, but instead, whether Shallcross would have insisted on going to trial had he known about the DNA report prior to entering his plea. In some circumstances, as in **McCallum**, remanding the matter to the circuit court to apply the proper legal standard may be necessary. However, on this record and under these circumstances, remand is unnecessary.

¶7 Applying the proper legal standard to this record, we conclude that it is not reasonably probable that a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report. The record in this case compels such

a conclusion. Indeed, the DNA report's failure to create a reasonable probability that a jury would have reasonable doubt of Shallcross's guilt is the reason why the circuit court concluded that Shallcross would not have insisted on going to trial had he known about the report prior to his plea. Accordingly, we affirm the circuit court's denial of Shallcross's motion to withdraw his pleas.

## BACKGROUND

¶8 The complaint alleges that on November 27, 2009, an intoxicated Shallcross was driving Gorectke's vehicle with Gorectke in the passenger seat when he slammed into a truck, killing the truck's two occupants. The complaint includes a confession by Shallcross, in which he states that immediately after the crash, he realized the truck was on fire, unbuckled his seatbelt, and crawled into the back seat, where he curled up and cried after hearing the truck explode.

¶9 Gorectke also gave a statement to police. He stated that moments after the accident, Shallcross crawled from the driver's seat to the back seat and told Gorectke to tell police that there was an unknown third person driving the vehicle. Gorectke stated that there was not a third person driving the vehicle and that Shallcross was the driver at the time of the accident.

¶10 Shallcross was charged with two counts of homicide by intoxicated use of a vehicle, two counts of homicide by intoxicated use of a vehicle (prohibited alcohol concentration) ("PAC charges"), and one count of operating a motor vehicle after revocation causing death. Pursuant to a plea agreement, the State dismissed outright the PAC charges and the operating after revocation charge, and Shallcross pleaded guilty to the two counts of homicide by intoxicated use of a vehicle. During his plea colloquy, Shallcross stipulated to the facts alleged in the complaint to establish the factual basis for his plea. During his allocution, Shallcross again

4

admitted to driving Gorectke's vehicle while intoxicated and causing the accident. Shallcross was sentenced to two consecutive terms each consisting of 12 years in prison followed by six years of extended supervision.

¶11    In 2011, Shallcross moved to withdraw his guilty pleas based on ineffective assistance of counsel. The circuit court denied the motion without holding a ***Machner***[5] hearing. Shallcross appealed, and we affirmed. The Wisconsin Supreme Court denied Shallcross's petition for review as untimely, so in 2013, he returned to the circuit court and filed a WIS. STAT. § 974.06 motion. He again challenged the effectiveness of trial counsel on new grounds, and he also challenged the effectiveness of his original postconviction counsel. The circuit court denied the motion without a ***Machner*** hearing, Shallcross appealed, and we affirmed. Shallcross timely petitioned for review in the Wisconsin Supreme Court, but it denied review. Shallcross then proceeded to federal court and filed a petition for a writ of habeas corpus, which was denied in 2016. The United States Court of Appeals for the Seventh Circuit denied Shallcross's request for a certificate of appealability. The United States Supreme Court denied his petition for a writ of certiorari.

¶12    In 2022, Shallcross filed the WIS. STAT. § 974.06 motion underlying this appeal. He alleged that newly discovered evidence not known at the time of his pleas, coupled with the State's failure to disclose this exculpatory evidence, required the circuit court to allow him to withdraw his pleas and proceed to trial. Shallcross identified two pieces of newly discovered evidence that formed the basis of his motion to withdraw his pleas: (1) sworn responses to interrogatories from Gorectke in a wrongful death lawsuit related to the accident, where Shallcross claims that

---

[5] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Gorectke contradicted his earlier statement to police that Shallcross was driving the vehicle when the accident occurred; and (2) a DNA report that shows the presence of an unidentified third person's DNA on the steering column airbag of the vehicle, supporting Shallcross's argument that a third person was driving Gorectke's vehicle.

¶13 The circuit court rejected the State's responsive argument that Shallcross was judicially estopped from arguing that he was not the driver of Gorectke's vehicle, explaining that applying judicial estoppel would contradict our decision in *State v. Ferguson*, 2014 WI App 48, 354 Wis. 2d 253, 847 N.W.2d 900. The circuit court then denied the portion of Shallcross's motion based on Gorectke's responses to interrogatories, concluding both that Shallcross was procedurally barred from raising this issue, *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994), and that Shallcross was negligent in seeking evidence of Gorectke's recollection of the accident.[6] As to Shallcross's remaining claim

---

[6] *See State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997) (explaining that "[f]or newly discovered evidence to constitute a manifest injustice and warrant the withdrawal of a plea," defendants must prove by clear and convincing evidence, among other things, that they were "not negligent in seeking evidence"). The circuit court was persuaded by the State's analysis:

> The fact that Gorectke answered written interrogatories is not material. What is material [are] his answers to questions in those interrogatories. Gorectke was a person known to [Shallcross] at the time he entered his guilty plea and Gorectke was known to [Shallcross] as a witness. [Shallcross]'s failure, prior to the entry of his pleas, to determine what Gorectke remembered of the collision was negligent.

On appeal, Shallcross does not address the circuit court's conclusion that he was negligent in investigating Gorectke's recollection of events, stating in his reply brief that the fact that he discovered the responses after he pleaded guilty was a sufficient reason for failing to raise the issue sooner. Accordingly, we deem this issue to be abandoned, and we discuss it no further. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments[.]"); *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

regarding the DNA report, the circuit court scheduled an evidentiary hearing to determine whether the report was exculpatory, whether it constituted newly discovered evidence, and whether Shallcross would have rejected the plea deal and gone to trial had the report been disclosed before the plea.

¶14     After the evidentiary hearing, the circuit court closely scrutinized the DNA report and other evidence, and it concluded that the DNA report was not exculpatory.  Shallcross claimed that the DNA report supported the assertion that a third person, observed running from the scene but who was not seen exiting the vehicle, was the driver.  The circuit court acknowledged that the DNA report showed the presence of three different individuals' DNA on the steering column airbag of the vehicle (namely, that of Shallcross, Gorectke, and an unidentified third person), however, it observed that Shallcross's blood, and only Shallcross's blood, was found on the driver's side, side airbag of Gorectke's vehicle.  The court concluded that the DNA report was "more or less determinative of the issue of who was driving," especially given the strength of the State's other evidence showing that Shallcross was the driver.  It then stated:

> In the final analysis, the DNA report, when analyzed in the context of all of the available evidence at the time of the plea would not produce a different result in this case.
>
> That different result, of course, would have been that the defendant would have declined to enter a plea or insisted on a trial.

Accordingly, it denied Shallcross's motion.

¶15     Shallcross appeals.

## DISCUSSION

### I. The circuit court did not erroneously exercise its discretion by refusing to apply judicial estoppel.

¶16 We begin by discussing the State's argument that Shallcross is judicially estopped from arguing that he was not driving Gorectke's vehicle because he admitted to doing so when he pleaded guilty. Judicial estoppel is an equitable doctrine that is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." ***State v. Fleming***, 181 Wis. 2d 546, 557, 510 N.W.2d 837 (Ct. App. 1993) (quoting ***Yanez v. United States***, 989 F.2d 323, 326 (9th Cir. 1993)). "The doctrine precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." ***State v. Petty***, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996).

¶17 We review a circuit court's decision whether to apply judicial estoppel under the erroneous exercise of discretion standard because "it is the prerogative of the [circuit] court to invoke judicial estoppel at its discretion." ***Fleming***, 181 Wis. 2d at 558. "The court erroneously exercises its discretion when it applies the wrong legal standard or makes a decision not reasonably supported by the facts of record." ***State v. Avery***, 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60.

¶18 The State argues that because Shallcross pleaded guilty (as opposed to entering a no-contest[7] or ***Alford***[8] plea), he admitted to driving the vehicle that caused the fatal accident, and no case "allows a defendant to unequivocally admit

---

[7] "A criminal defendant, by pleading no contest, declines to exercise his or her right to put the State to their burden of proving him [or her] guilty beyond a reasonable doubt, but does not admit unqualified guilt." ***State v. Black***, 2001 WI 31, ¶15, 242 Wis. 2d 126, 624 N.W.2d 363.

[8] ***North Carolina v. Alford***, 400 U.S. 25 (1970). "An ***Alford*** plea is a plea in which the defendant agrees to accept a conviction while simultaneously maintaining his or her innocence." ***State v. Kelty***, 2006 WI 101, ¶18 n.10, 294 Wis. 2d 62, 716 N.W.2d 886.

at a plea hearing that he committed an act and turn around at a later court hearing and unequivocally deny under oath that he committed that same act."

¶19      We disagree, at least insofar as the State seeks to impose a rule that requires circuit courts to apply judicial estoppel where a defendant bases a motion for plea withdrawal on newly discovered evidence that contradicts a fact admitted to as a consequence of pleading guilty.  Ultimately, the State's proposed rule is incompatible with our case law allowing newly discovered evidence as the basis for withdrawing a guilty plea.

¶20      In refusing to apply judicial estoppel, the circuit court relied on our decision in *Ferguson*.  In *Ferguson*, we applied the newly discovered evidence test where the defendant sought to withdraw his guilty plea based on newly discovered recantation evidence that contradicted a fact to which Ferguson admitted when he pleaded guilty (i.e., shooting the victim).  *Id.*, 354 Wis. 2d 253, ¶¶5-24.  The State complains that the circuit court erroneously exercised its discretion by concluding that *Ferguson* controlled the issue, observing that neither we nor the parties discussed judicial estoppel in *Ferguson*.

¶21      While the State is correct that *Ferguson* does not discuss judicial estoppel, the circuit court did not erroneously exercise its discretion by relying on *Ferguson* for its refusal to apply judicial estoppel.  In our view, the State's argument that the circuit court erroneously exercised its discretion by refusing to apply judicial estoppel represents a blanket rule that, if accepted, would directly contradict *Ferguson* and other controlling cases that apply the *McCallum* newly discovered evidence test to motions to withdraw guilty pleas.  That is, the State's argument boils down to the assertion that after a defendant pleads guilty, they cannot move to withdraw their pleas based on newly discovered evidence that would tend to negate

a fact to which the defendant admitted by pleading guilty. Moreover, under the State's rule, it would be an erroneous exercise of discretion for a circuit court to refuse to apply judicial estoppel. This rule cannot coexist with *Ferguson*.

¶22 In *Ferguson*, the defendant pleaded guilty to first-degree reckless homicide while using a dangerous weapon as a party to a crime. *Id.*, 354 Wis. 2d 253, ¶5. Ferguson told the circuit court that it could rely on the facts alleged in the criminal complaint and on the testimony at the preliminary examination as the factual basis for his plea. *Id.*, ¶6. He said that there were no facts in the complaint with which he disagreed. *Id.* In the complaint and the preliminary examination, two witnesses said that they saw Ferguson shoot the victim. *Id.*, ¶9. However, Ferguson moved to withdraw his guilty plea after these two witnesses recanted and instead identified a different individual as the shooter. *Id.*, ¶¶11, 15. We applied the standard set out in *McCallum* applicable to motions to withdraw guilty pleas based on newly discovered evidence, and we affirmed the circuit court's denial of Ferguson's motion to withdraw his plea. *Ferguson*, 354 Wis. 2d 253, ¶¶24, 27.

¶23 The circuit court reasonably concluded that applying judicial estoppel against Shallcross would contradict *Ferguson* because the newly discovered evidence in both cases challenges a fact previously admitted to as a consequence of pleading guilty. The State's argument that the circuit court erroneously exercised its discretion by not applying judicial estoppel in this case leads to the conclusion that defendants may *never* seek to contradict a fact admitted to as a consequence of pleading guilty, a conclusion that would directly contradict the analysis in *Ferguson* applying the *McCallum* test under the same circumstances.

¶24 Accordingly, we conclude that the circuit court did not erroneously exercise its discretion by refusing to apply judicial estoppel based on *Ferguson*.

**II. Shallcross's *Brady* claim fails because the DNA report is not exculpatory.**

¶25　Having concluded that the circuit court did not erroneously exercise its discretion by refusing to apply judicial estoppel, we now turn to the *Brady* issue. Shallcross argues that the circuit court should not have applied the *McCallum* test for plea withdrawals based on newly discovered evidence and instead should have analyzed his motion as asserting a *Brady* claim.[9] The State argues, and the circuit court concluded, that the DNA report is not exculpatory, so it cannot be the basis of a *Brady* claim.

¶26　Under the Fourteenth Amendment, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1983). The evidence must be "favorable to the accused, either because it is exculpatory or impeaching," it "must have been suppressed by the State, either willfully or inadvertently," and it "must be material" to the defendant's guilt or punishment. *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468. "[W]e independently review whether a due process violation has occurred, but we accept the [circuit] court's findings of historical fact unless clearly erroneous." *Id.*

¶27　We agree with the State and the circuit court that the DNA report is not exculpatory, so it cannot be the basis of a *Brady* claim. Shallcross claimed that the DNA report supported his assertion that a third person, seen running from the

---

[9] Shallcross also argues that the State violated WIS. STAT. § 971.23 by not disclosing the DNA report. This argument must be rejected without reaching the merits because WIS. STAT. § 974.06 can only be used to raise constitutional or jurisdictional challenges. Sec. 974.06(1); *Vara v. State*, 56 Wis. 2d 390, 392, 202 N.W.2d 10 (1972); *State v. Nickel*, 2010 WI App 161, ¶7, 330 Wis. 2d 750, 794 N.W.2d 765.

scene but who was not seen exiting the vehicle, was the driver. The circuit court acknowledged that the DNA report showed the presence of three different individuals' DNA on the steering column airbag of the vehicle (namely, that of Shallcross, Gorectke, and an unidentified third person); however, it observed that Shallcross's blood, and only Shallcross's blood, was found on the driver's side, side airbag of Gorectke's vehicle.

¶28    On appeal, Shallcross suggests that, "as explained by experts," the type of roll-over crash experienced by Shallcross and Gorectke "ha[s] a tendency to disperse trace evidence throughout the vehicle," and this could explain why Shallcross's blood was found on the driver's side, side airbag even though he was in the back seat. However, Shallcross does not present expert evidence to support his assertion, and does not explain why Gorectke's or the unknown third person's blood would not similarly be dispersed throughout the vehicle, including on the driver's side, side airbag, especially if the unknown third person was driving at the time of the accident.

¶29    Only Shallcross's blood was found on both driver's side airbags: the steering column airbag *and* the side airbag. We agree with the circuit court that the DNA report is "more or less determinative" on the issue of who was driving Gorectke's vehicle; it was Shallcross. Accordingly, we reject Shallcross's **Brady** claim because the DNA report was not exculpatory.

### III.    There is no reasonable probability that a jury would have a reasonable doubt as to Shallcross's guilt in a trial that included the DNA report.

¶30    Finally, having concluded that the DNA report is not exculpatory, we turn to whether the DNA report constitutes newly discovered evidence justifying withdrawal of Shallcross's guilty pleas. We conclude that the DNA report does not

12

justify plea withdrawal because there is no reasonable probability that a jury would have a reasonable doubt as to Shallcross's guilt in a trial that included the DNA report.

¶31    In *McCallum*, our supreme court set forth the following criteria that must be met for newly discovered evidence to constitute a manifest injustice and warrant the withdrawal of a plea:

> First, the defendant must prove, by clear and convincing evidence that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.

*Id.*, 208 Wis. 2d at 473. We assume without deciding that the first four criteria are satisfied, and we instead focus on whether a reasonable probability exists that a different result would be reached in a trial.

¶32    The State recognizes that *McCallum* instructs circuit courts to "determine whether a reasonable probability exists that a different result would be reached *in a trial*" after determining that the first four criteria were met and the evidence at issue constitutes "newly discovered evidence." *Id.* (emphasis added). However, the State urges us to apply a different test, the one that is "employed in every other context involving plea withdrawal motions," namely, "whether it is reasonably probable the defendant would have rejected the plea agreement and gone to trial but for the alleged error."

¶33    In our view, the State's argument has merit. In several other commonly litigated plea withdrawal contexts, courts must determine whether there

is a reasonable probability that the defendant would not have pleaded guilty and instead insisted on going to trial but for the alleged error. For example, when claiming ineffective assistance of trial counsel as a basis for plea withdrawal, the defendant must prove that it is reasonably probable that they would not have pleaded guilty and would have gone to trial but for counsel's deficient performance. *State v. Jeninga*, 2019 WI App 14, ¶¶11-12, 386 Wis. 2d 336, 925 N.W.2d 574. Likewise, when a defendant proves that the circuit court erroneously denied a suppression motion, they are not allowed to withdraw their guilty plea if the State proves harmless error, i.e., that it is not reasonably probable the defendant would have rejected the plea agreement and gone to trial had the evidence been suppressed. *State v. Semrau*, 2000 WI App 54, ¶¶21-22, 233 Wis. 2d 508, 608 N.W.2d 376. Additionally, when a defendant seeks to withdraw a guilty plea on any constitutional ground, he must prove that the constitutional violation "caused him to plead guilty[.]" *State v. Harris*, 2004 WI 64, ¶11, 272 Wis. 2d 80, 680 N.W.2d 737.

¶34 To our knowledge, no controlling authority has ever explained why the test is different when plea withdrawal is based on newly discovered evidence.[10] Lack of explanation notwithstanding, we cannot adopt the State's standard without contradicting *McCallum*. *McCallum* dealt with recantation evidence, and it concluded:

> The correct legal standard when applying the "reasonable probability of a different outcome" criteria is whether there is a reasonable probability that a jury, looking at both the

---

[10] In *State v. Sturgeon*, we held that a *Brady* violation can support a postsentencing motion to withdraw a plea. *State v. Sturgeon*, 231 Wis. 2d 487, 605 N.W.2d 589 (Ct. App. 1999). Because a *Brady* violation is a constitutional violation, the test we applied was whether the constitutional violation "caused the defendant to plead guilty[.]" *Sturgeon*, 231 Wis. 2d at 496. Here, however, we do not have a *Brady* violation, so the test we apply is the one announced in *McCallum* which asks whether a reasonable probability exists that a jury would have reasonable doubt as to the defendant's guilt in a trial that included the newly discovered evidence. *McCallum*, 208 Wis. 2d at 474.

accusation and the recantation, would have a reasonable doubt as to the defendant's guilt. This standard is equally applicable to motions to withdraw an *Alford* plea, motions to withdraw a guilty plea, and motions for a new trial.

*McCallum*, 208 Wis. 2d at 474. In *State v. Carnemolla*, we concluded that this test was not limited to situations where the newly discovered evidence is recantation evidence. *Id.*, 229 Wis. 2d 648, 661 n.4, 600 N.W.2d 236 (Ct. App. 1999) ("We see no reason why the basic standards articulated in *McCallum* and other recantation cases should not apply equally in non-recantation cases, where the new evidence merely takes on a slightly different form."). We see no avenue to adopt the State's test without contradicting these cases. *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997). We are bound by *McCallum*'s pronouncement that after determining that the evidence is "newly discovered evidence," the test is whether a jury would have a reasonable doubt as to the defendant's guilt in a trial that included the newly discovered evidence.

¶35 In this case, the circuit court applied the incorrect legal standard. Instead of asking whether a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report, the court asked whether Shallcross would have insisted on going to trial had he known about the DNA report prior to his plea. Because Shallcross's motion for plea withdrawal was filed after he was sentenced, withdrawal of his plea "rests in the circuit court's discretion." *McCallum*, 208 Wis. 2d at 473. "An exercise of discretion based on an erroneous application of the law is an erroneous exercise of discretion." *Id.*

¶36 While it may be appropriate in some circumstances to stop here and remand the cause to the circuit court to apply the proper legal standard, we need not and do not do so in this case. Instead, we apply the proper legal standard and conclude that there is no reasonable probability that a jury would have a reasonable

doubt as to Shallcross's guilt if it was presented with the DNA report. *McCallum* does not compel remand.

¶37    In *McCallum*, the supreme court held that the circuit court applied the wrong legal standard in determining whether there was a reasonable probability of a different outcome at trial. *Id.* at 468, 474-75. McCallum requested that the supreme court apply the proper legal standard and determine that he was entitled to plea withdrawal, but the court declined, explaining:

> *Although we could apply the proper legal standard to the facts of this case and determine whether McCallum should be permitted to withdraw his* **Alford** *plea,* **Libke v. State***, 60 Wis. 2d 121, 129, 208 N.W.2d 331 (1973), our independent review of the record indicates that the wiser course, under these facts, is to remand this case to the circuit court for a hearing to apply the proper legal standard.*

*McCallum*, 208 Wis. 2d at 479 (emphasis added).

¶38    Thus, *McCallum* does not *require* that we remand the case after concluding that the circuit court applied the wrong legal standard. In *McCallum*, the court's decision to remand the case to the circuit court was driven by the fact that the credibility of the recantation was crucial to the application of the correct legal standard. It explained that remand was the "wiser course" because "[r]ecantation, by its very nature, calls into question the credibility of the witness or witnesses ... and the circuit court judge is in a much better position" to resolve whether the recantation would raise a reasonable doubt in the minds of a jury. *Id.* "Because the circuit court is in a better position to determine whether a reasonable probability exists that a reasonable jury looking at both the recantation and the original accusation would have a reasonable doubt as to McCallum's guilt, we defer this determination to the circuit court." *Id.* at 480.

16

¶39 This case does not involve a credibility determination. Accordingly, as contemplated by *McCallum*, we choose not to remand the matter and instead apply the proper legal standard to this record and conclude that it is not reasonably probable that a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report. The record in this case demands such a conclusion, and in fact, the DNA report's failure to create a reasonable probability that a jury would have reasonable doubt of Shallcross's guilt is the reason why the circuit court concluded that Shallcross would not have insisted on going to trial had he known about the report prior to his plea.

¶40 We agree that the overwhelming evidence of Shallcross's guilt compels the conclusion that there is not a reasonable probability that a jury would have a reasonable doubt as to Shallcross's guilt if it were presented with *more* inculpatory evidence (i.e., the DNA report). As explained above, we agree with the circuit court's conclusion that the DNA report is "more or less determinative" on the issue of whether Shallcross was driving.

¶41 Moreover, Shallcross's theory that an unidentified third person was driving Gorectke's vehicle is not supported by the DNA report and appears to rest on a misinterpretation of a witness statement. In his motion, Shallcross contended that a witness told police that immediately after the accident, he watched an individual exit Gorectke's vehicle and flee the scene on foot, leaving the driver's side door open; however, nothing in the record supports this contention. The witness did not tell police that he watched an individual exit Gorectke's vehicle from the driver's side door, just that he saw someone cross in front of Gorectke's vehicle after the crash and then leave the scene. The police report explains that a police officer who had been following Gorectke's vehicle immediately prior to the accident was the first to respond to the accident scene. That officer stated that when

17

he approached Gorectke's vehicle, the driver's door was closed and he lifted the driver's side airbag to look inside and saw only Gorectke and Shallcross. The officer did not see anyone in the driver's seat.

¶42    Gorectke told police that, moments after the accident, Shallcross crawled from the driver's seat to the back seat and told Gorectke to tell police that there was some unknown third person driving the vehicle. Gorectke stated that there was not a third person driving the vehicle and that Shallcross was the driver at the time of the accident. Two days after the accident, Shallcross confessed to police that he was driving Gorectke's vehicle. During his allocution, Shallcross admitted to driving Gorectke's vehicle while intoxicated and causing the accident.[11]

¶43    We agree with the circuit court that this evidence is overwhelming, and there is no reasonable probability that a trial including the DNA report would create reasonable doubt.

### CONCLUSION

¶44    We conclude that Shallcross is not judicially estopped from arguing that newly discovered evidence (i.e., the DNA report) supports the assertion that he was not driving Gorectke's vehicle and that this evidence justifies the withdrawal of his guilty pleas. We also conclude that Shallcross's *Brady* claim fails because the DNA report is not exculpatory.

---

[11] These inculpatory allocution statements would be admissible in a trial, and therefore, are properly considered when determining whether a reasonable probability exists that a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report. *See State v. Rejholec*, 2025 WI App 36, ¶22, 417 Wis. 2d 27, 24 N.W.2d 146 (concluding that inculpatory allocution statements made voluntarily after plea negotiations had ceased and before the defendant moved to withdraw their plea are admissible at a subsequent trial).

¶45     We further conclude that the basic standards set forth in *McCallum* apply to this case.  In this case, that means that the circuit court must determine whether there is a reasonable probability that a jury would have a reasonable doubt as to Shallcross's guilt in a trial that included the DNA report.  *Id.*, 208 Wis. 2d at 475.

¶46     Here, the circuit court applied the incorrect legal standard when it focused its analysis on whether Shallcross would have insisted on going to trial had he known about the DNA report prior to his plea, when the correct standard considers whether a jury would have reasonable doubt as to Shallcross's guilt in a trial that included the DNA report.

¶47     Applying the proper legal standard to this record, we conclude that it is not reasonably probable that, in a trial that included the DNA report, a jury would have reasonable doubt as to Shallcross's guilt.  The record in this case compels such a conclusion.  Accordingly, we affirm the circuit court's denial of Shallcross's motion to withdraw his pleas.

        *By the Court.*—Order affirmed.

        Recommended for publication in the official reports.